## ARMSTRONG v. GOYCO et al.

Circuit Court of Appeals, First Circuit.
December 18, 1928.

No. 2187.

Jose A. Poventud, of Ponce, Porto Rico (Alberto S. Poventud, of Ponce, Porto Rico, on the brief), for appellant.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the Supreme Court of Porto Rico. The parties are the owners of adjoining lots within the city of Ponce on the island of Porto Rico.

The appellant constructed upon his own land what the Supreme Court designates as a terrace, resting it upon a wall near the boundary line between his land and that of the appellees. It rested upon three pillars placed upon a concrete wall, and on each side of the central pillar were openings. The terrace proper was upon the second floor, and in the top part of the wall next to the boundary line between the adjoining lot owners were six openings, each 42 centimeters high and 32 centimeters wide. These openings were covered by wooden crossbars placed at a distance of 13 centimeters from each other.

The appellees filed a bill of complaint in the District Court of Ponce asking that the appellant be compelled to close up the openings or windows in the lower part of the structure erected by him, and to reconstruct the six openings or windows in the upper story so as to conform to the provisions of section 588 of the Civil Code of Porto Rico.

The applicable sections of the Code are as follows:

"Sec. 588. The owner of a wall which is not a party wall, adjoining another's tenement, may make in it windows or openings to admit light, at the height of the ceiling joists

or immediately under the ceiling, of the dimensions of thirty centimeters square, and, in any case, with an iron grate embedded in the wall and a wire screen. * * * "

"Sec. 589. Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property.

"Neither can side or oblique views be opened over the said property, unless there be a distance of sixty centimeters."

The District Court sustained the complaint and ordered the appellant to close up the two openings or windows in the lower part of the structure built by him and to reform the six openings or windows in the second story or terrace so that the same should conform to the provisions of section 588 of the Civil Code.

Upon appeal the Supreme Court of Porto Rico modified the judgment of the District Court by permitting the appellant to leave openings of 30 square centimeters immediately under the ceiling, with iron grates embedded in the wall and also wire screens in the lower story of the structure. As thus modified the judgment of the District Court was affirmed.

The errors assigned are in substance that the Supreme Court erred in holding that section 589 of the Civil Code of Porto Rico does not deprive the appellant of his property rights without due process as guaranteed by the Constitution of the United States and by the Organic Act of Porto Rico (39 Stat. 951); that the Supreme Court erred in holding that the openings on the south side of the appellant's structure adjacent to the plaintiff's lot are windows within the prohibition of section 589 of the Civil Code; and that a direct view may be had from them upon the appellees' adjoining house.

A photograph was exhibited to this court at the oral argument, but the District Judge had the benefit of a view of the premises, and at great length described the situation as he saw it. Both he and the Supreme Court, learned in the local law of Porto Rico, have found that these openings were windows affording a direct view of the appellees' premises, and both courts have found that they are covered by the language of section 589 of the Civil Code. Upon the question of whether these openings are windows under the statute, or whether they commanded a direct view of the premises of the appellees, we feel bound by the judgment of the Porto Rican courts.

In an elaborate argument of the other error assigned, the appellant attacks the validity of sections 588 and 589 of the Civil Code on the ground that they are in violation of the Federal Constitution and also of the Organic Act of Porto Rico.

A very interesting and learned discussion of the history of these sections is given by Chief Justice Del Toro, who wrote the opinion of the Supreme Court. When the present Civil Code was enacted in 1900, these sections were taken from the old Code under which Porto Rico had been governed. They have been law in Porto Rico for more than 40 years, and several decisions of the Supreme Court of Porto Rico are cited in which their validity has been sustained.

The situation in Porto Rico is much the same as in the United States, where under the increasing demands of society the police power of the different states has been extended to protect the health, safety, morals, and public welfare by laws and ordinances regulating the height of buildings, the material to be used in their construction, the area to be left vacant about them, and restricting the erection of certain buildings in certain parts of congested urban districts. See Euclid v. Ambler Co., 272 U. S. 365, 47 S. Ct. 119, 71 L. Ed. 303, 54 A. L. R. 1016, for a very full discussion of the growth of the police power of the states.

It is not in controversy that the appellant has erected his structure within two meters of the boundary line between his land and that of the appellees. His counsel contends in argument that the restriction placed upon him by section 589 of the Civil Code amounts to a taking of his land without just compensation.

It is not a taking by the right of eminent domain for which compensation must be awarded, but is an exercise of police power by the Legislature of Porto Rico for the public welfare, and appears to be a reasonable exercise of the discretion lodged within the Porto Rican Legislature by Congress to protect the privacy of the home, not of the appellees alone but of all the property owners in Porto Rico. The appellant is compelled to submit to this reasonable restriction in the use of his property in the interests of the public welfare, and as compensation he shares as a member of the community in the public benefit to which such restrictions contribute.

In Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923, the court, in speaking of the police power of a state and the Fourteenth Amendment, said:

902

"But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. * * * Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good."

In Commonwealth v. Alger, 7 Cush. (Mass.) 53, a case where there was a statute prohibiting the erection and maintenance of a wharf on the owner's land beyond certain fixed lines it was not claimed that the proposed wharf would restrict navigation, and it was admitted that it would not. The court held that the statute was within the police power of the state and not forbidden by its Constitution. Of this statute Chief Justice Shaw said:

"We think it is a settled principle growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this Commonwealth, as well that in the interior as that bordering on tide waters, is derived directly or indirectly from the government, and held subject to those general regulations, which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. This is very different from the right of eminent domain."

In the matter of local regulations and the exercise of police power Porto Rico possesses all the sovereign powers of a state, and any exercise of this power which is reasonable and is exercised for the health, safety, morals, or welfare of the public is not in contravention of the Organic Act nor of any provision of the Federal Constitution.

The judgment of the Supreme Court of Porto Rico is affirmed, without costs.