## GONZALEZ v. PEOPLE OF PORTO RICO.
### No. 2511.

Circuit Court of Appeals, First Circuit.
June 29, 1931.

sold, offered or had for sale, or that it be transported or stored for the purpose of using it for human consumption, or to use it for industrial purposes, when intended for the preparation of food for human consumption."

The specific charge in the information was that the defendant "on or about the thirteenth day of August, 1928, and in the municipality of San Juan, Porto Rico, * * * unlawfully, wilfully and maliciously had and offered for sale, * * * coffee roasted and ground, adulterated with another substance known as sugar."

It appeared that the defendant-appellant, on or about the 13th day of August, 1928, and in San Juan, offered for sale, with the purpose of being used for human consumption, coffee roasted and ground, adulterated with sugar; that the adulteration was not injurious to health; and that the package in which the coffee so adulterated was sold bore a label stating that the coffee was mixed with 4½ per cent. of sugar.

The defendant, in his assignments of error, makes two contentions: (1) That the facts alleged in the information, admitted and found, do not constitute a public offense, because section 1 is unconstitutional; and (2) that section 1 is in conflict with the Federal Food and Drugs Act (21 USCA §§ 1–5, 7–15), which allows harmless adulterations, provided the container or package bear a label stating the substance with which the article is adulterated and the percentage of the adulteration, and is therefore invalid.

In Armstrong v. Goyco, 29 F.(2d) 900, 902, this court said:

"In the matter of local regulations and the exercise of police power Porto Rico possesses all the sovereign powers of a state, and any exercise of this power which is reasonable and is exercised for the health, safety, morals, or welfare of the public is not in contravention of the Organic Act nor of any provision of the Federal Constitution."

As the Legislature of Porto Rico, under the Organic Act, possesses the powers of a state, including the police power, the first question presented is whether the italicized provisions of section 1, under which the information was brought and conviction had, is a lawful enactment within the scope of that power.

All rights of a citizen are held subject to the lawful exercise of the police power. And unless a court can clearly see that a law purporting to have been enacted to protect

A. Dones, for appellant.

William C. Rigby, of Washington, D. C. (James R. Beverley, Atty. Gen., and Blanton Winship, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Porto Rico sustaining a judgment of the District Court of San Juan, sentencing the defendant-appellant for a violation of the provisions (hereafter italicized) of Act No. 24 of April 20, 1928, of the Legislature of Porto Rico. Section 1 of that Act provides:

"Sec. 1. *It shall be illegal to adulterate or to mix coffee, in the grain, ground, or pulverized, with any other grain or substance with the intention of selling it, or to offer or have it for sale, and it shall be equally illegal for said coffee, so adulterated or mixed, to be*

the public health, public morals, or general welfare has no substantial relation to those objects, it cannot set it aside as unconstitutional. Purity Extract Co. v. Lynch, 226 U. S. 192, 201–202, 33 S. Ct. 44, 57 L. Ed. 184; Hennington v. Georgia, 163 U. S. 299, 303–304, 16 S. Ct. 1086, 41 L. Ed. 166; Booth v. Illinois, 184 U. S. 425, 429–430, 22 S. Ct. 425, 46 L. Ed. 623; Minnesota v. Barber, 136 U. S. 313, 320, 10 S. Ct. 862, 34 L. Ed. 455; Mugler v. Kansas, 123 U. S. 623, 661, 8 S. Ct. 273, 31 L. Ed. 205; State v. Roberts, 74 N. H. 476, 478, 69 A. 722, 16 L. R. A. (N. S.) 1115.

The Supreme Court of Porto Rico, when this case was before it for consideration, stated the object of the sale provisions of the act as follows:

"The purpose of the law was to protect the public against fraud and deceit by discouraging the admixture of cheaper or inferior grain or other substance, whether wholesome or unwholesome, which would increase the weight and impair the quality of coffee as such."

It is evident that coffee adulterated with sugar, as an article of sale, has a harmful tendency. Such adulteration cheapens the article and increases its weight, and consequently has a tendency to deceive and defraud the purchasing public. Murphy v. California, 225 U. S. 623, 629, 32 S. Ct. 697, 698, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153.

In that case the court said:

"Playing at billiards is a lawful amusement; and keeping a billiard hall is not, as held by the supreme court of California on plaintiff's application for habeas corpus, a nuisance per se. But it may become such; and the regulation or prohibition need not be postponed until the evil has become flagrant. That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything which could affect the morality of the community or of his patrons. The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation. The ordinance is not aimed at the game, but at the place; and where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts should be prohibited, the courts cannot go behind their finding and inquire into local conditions; or whether the defendant's hall was an orderly establishment, or had been conducted in such manner as to produce the evils sought to be prevented by the ordinance." See, also, Booth v. Illinois, 184 U. S. 425, 429, 22 S. Ct. 425, 46 L. Ed. 623.

The purpose of the act here in question was to safeguard the general welfare of the citizens of the island and, as it tends to accomplish that purpose, it is clear that the Legislature was acting within its constitutional powers in enacting it. The power of the Legislature to regulate, restrain, or prohibit what is injurious to the general welfare is universally recognized. The fact that the adulterated article was not injurious to health is unimportant. Its tendency, as an article of sale, was to mislead and deceive the public. This was an adequate reason for the enactment of the law. Plumley v. Massachusetts, 155 U. S. 461, 15 S. Ct. 154, 39 L. Ed. 223; Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 358, 18 S. Ct. 862, 43 L. Ed. 191.

■ The extent of the restraint, whether absolute or regulatory, presented a political question for the Legislature, in its discretion, to determine and is not subject to review by a court. Silz v. Hesterberg, 211 U. S. 31, 40, 29 S. Ct. 10, 53 L. Ed. 75; Purity Extract Co. v. Lynch, 226 U. S. 192, 201–202, 33 S. Ct. 44, 57 L. Ed. 184; Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 34 L. Ed. 620.

We think the court below did not err as to this branch of the case.

■ Neither do we think it erred in holding that the National Food and Drugs Act did "not forbid the enactment of any local law prohibiting the manufacture of, or traffic in, food or other things"; and that there was "no conflict between that statute and the law now under consideration."

Section 2 of chapter 3915, 34 Stat. at Large, p. 768 (21 USCA § 2), does not apply to the manufacture, sale, or offering for sale of adulterated food in Porto Rico, or in any of the insular possessions of this government. That section extends only to a state, territory, or the District of Columbia. That our insular possessions were not intended to be covered by section 2 clearly appears from

section 10 (21 USCA § 14), which makes it a crime to transport adulterated food "from one State, Territory, District, or insular possession to another for sale," whereas section 2 omits the term "insular possession."

The judgment of the Supreme Court of Porto Rico is affirmed.