**Miguel A. MORENO RIOS, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 5283.**

United States Court of Appeals
First Circuit.

Heard Feb. 4, 1958.

Decided May 19, 1958.

Gerardo Ortiz Del Rivero, San Juan, P. R., for appellant.

Ruben Rodriguez-Antongiorgi, U. S. Atty., San Juan, P. R., for appellee.

Juan B. Fernandez Badillo, Atty. Gen., Commonwealth of Puerto Rico, Arturo Estrella, Asst. Atty. Gen., Abe Fortas, Washington, D. C., and Jose Trias Monge, San Juan, P. R., on the brief for the Commonwealth of Puerto Rico, as amicus curiae.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

Miguel A. Moreno Rios, after having pleaded guilty to an information charging a violation of the Narcotic Drugs Import and Export Act, 21 U.S.C.A. §§ 171, 173, 174, and having been sentenced thereon as a second offender to a term of seven years' imprisonment plus a nominal fine by Hon. A. Cecil Snyder, Chief Justice of the Supreme Court of Puerto Rico, serving as Acting Judge in the United States District Court for the District of Puerto Rico, filed in the same court a motion under 28 U.S.C. § 2255 seeking to have the judgment of conviction set aside and vacated as a nullity. From an order entered by the regular district judge denying this motion to vacate, the present appeal was duly taken.

Two grounds are urged by appellant to support his proposition that the judgment of conviction is void: (1) Because the federal criminal statute in question is inapplicable to the Commonwealth of Puerto Rico, and (2) because Chief Justice Snyder was not lawfully designated to serve as acting judge in the federal district court. Neither point amounts to anything. In this determination we are in accord with the conclusions reached by the Commonwealth Government in its brief amicus curiae. We address ourselves to the two points in reverse order.

In § 41 of the Puerto Rico Organic Act of 1917 it was provided that, in case of vacancy or of the death, absence or

other legal disability on the part of the regular judge of the district court, the President of the United States was authorized to designate one of the judges of the Supreme Court of Puerto Rico to discharge the duties of judge in the said federal district court. 39 Stat. 966, 48 U.S.C.A. § 863. That authorization was still in the law when the Congress in 1950 enacted Public Law 600, 48 U.S.C.A. § 731b et seq., offering to the people of Puerto Rico a "compact" under which they might "organize a government pursuant to a constitution of their own adoption." 64 Stat. 319. It was provided in § 5 of Public Law 600 that certain sections of the Organic Act, as amended, should be deemed repealed at such time as the Constitution of Puerto Rico became effective, but § 41 of the Organic Act was left untouched and unrepealed. Section 4 of Public Law 600 stated that except as provided in § 5, the Organic Act of 1917, as amended, "is hereby continued in force and effect and may hereafter be cited as the 'Puerto Rican Federal Relations Act'." The people of Puerto Rico having by referendum voted to accept the terms of the compact offered to them and having adopted a Constitution of the Commonwealth of Puerto Rico, the said constitution was approved by Joint Resolution of the Congress on July 3, 1952, 66 Stat. 327. Since the Constitution of the Commonwealth, as thus approved, 48 U.S.C.A. § 731d note, provides in § 8 of Art. V that the justices of the Supreme Court of Puerto Rico shall be appointed by the Governor of the Commonwealth instead of by the President of the United States as had previously been prescribed in the Organic Act, it is contended that the provision of § 41 of the old Organic Act, authorizing the President to designate a judge of the Supreme Court of Puerto Rico to serve as acting judge in the federal court, must be deemed to have been impliedly repealed by force of the Joint Resolution of the Congress approving the Puerto Rican Constitution. 66 Stat. 327. This is said to be because an attempt by the President to impose such duties upon a justice of the Supreme Court of Puerto Rico would invade and disregard the sovereign powers given to the Governor of the Commonwealth under the Constitution.

The foregoing objection is somewhat reminiscent of the case of Spiers v. Bowles, Em.App.1945, 151 F.2d 77. In that case one Jack Spiers, describing the nature of his business as "The sale of whisky in the State of Mississippi in violation of the prohibition laws of said state", filed a protest with the Price Administrator challenging the validity of certain provisions of a federal price regulation imposing ceiling prices on the sales of whisky, so far as the said regulation applied to the State of Mississippi where, under state law, all sales of liquor were forbidden. It was contended that such action by the federal government would trench upon the powers of the sovereign State of Mississippi. Although such an argument would have come with better grace from the government of Mississippi, no objection was forthcoming from that source. So, in the case at bar, the Commonwealth of Puerto Rico has offered no objection that the President's Executive Order of January 6, 1956, No. 10653, (1956) U.S.Code Cong. & Adm. News, p. 4913, designating Chief Justice Snyder to serve as acting judge in the federal district court during that year, was void as being in conflict with the Constitution of the Commonwealth. Upon the contrary, the Commonwealth has filed a brief amicus curiae in the present case in which the following comment is made upon this provision of the Puerto Rican Federal Relations Act:

"This section simply authorizes the President, as a matter of administrative convenience, to appoint a Commonwealth Justice, and him to serve, as acting United States District Judge for the District of Puerto Rico, just as it could have authorized the President so to appoint any member of the Puerto Rican bar. The rendering of such judicial service is, on the other hand, necessarily predicated on the avail-

ability and acceptance of the person concerned. The President not being authorized under the statute to compel a Justice of the Supreme Court to serve, it certainly cannot be said that the President is interfering with the judicial administration of Puerto Rico or that he is exercising executive or judicial powers that properly belong to the Commonwealth."

While we assume that appellant had standing to challenge the lawfulness of the tribunal before which he appeared for sentencing, we hold, on the merits, that the challenge is not well taken.

This particular question is not likely to arise again, since the justices of the Supreme Court of Puerto Rico are now unwilling to act in the federal district court, and the President of the United States, being unable to compel them to serve, makes no such designation. The result is that, for the future, resort must be had to the general provisions of the Judicial Code, 28 U.S.C. §§ 291–296.

■ With reference to the coverage of the Narcotic Drugs Import and Export Act, appellant does not contend, indeed could not successfully contend, that the Congress of the United States lacks the power to extend its provisions to the Commonwealth of Puerto Rico. Under the terms of the "compact" to which the people of Puerto Rico have manifested assent, there remains in the Puerto Rican Federal Relations Act the important provision: "The statutory laws of the United States not locally inapplicable * * * shall have the same force and effect in Puerto Rico as in the United States * * *." 48 U.S.C.A. § 734. Since the terms of the Narcotic Drugs Import and Export Act would affect Puerto Rico in the same manner as they do the States of the Union, and since the problem dealt with is a general one, certainly not "locally inapplicable" to Puerto Rico, it is clear that Congress has the power to apply the Act to Puerto Rico; and the only remaining question is whether Congress has intended such application.

■■ As bearing on the intention of Congress, it is worth while to note (1) that the maxim *expressio unius est exclusio alterius* is nothing but an aid to interpretation, and as an aid it is pretty weak when applied to acts of Congress enacted at widely separated times. Also (2) when Congress uses the term "territory", this may be meant to be synonymous only with "place" or "area", and not necessarily to indicate that Congress has in mind the niceties of language of a political scientist who might say that Puerto Rico under its commonwealth status has ceased to be an unincorporated "territory" of the United States.

■ There can be no doubt that the Narcotic Drugs Import and Export Act applied to Puerto Rico just prior to the date in 1952 when the Commonwealth came into being. That Act, originally passed in 1909 (35 Stat. 614), was amended in 1922 (42 Stat. 596) so as to define the term "United States", when used in a geographical sense, as including "the several States and Territories, and the District of Columbia". The same amendment imposed a penalty, in § 2(c) of the Act, upon any person who fraudulently or knowingly "brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law". In the present case the information to which appellant pleaded guilty charged that he had "knowingly and fraudulently received, concealed and facilitated the transportation and concealment of an amount of a narcotic drug * * * commonly known as heroin, after said heroin had been imported and brought into the United States contrary to law, knowing that said heroin had theretofore been imported and brought in contrary to law * * *."

If, then, the Congress originally intended to apply the Act to Puerto Rico,

it would seem clear, in view of the general provision of the Federal Relations Act to the effect that the statutory laws of the United States not locally inapplicable shall have the same force and effect in Puerto Rico as in the United States, that it was not necessary for the Congress to alter specifically all outstanding statutes thereto previously applicable in order to continue their effectiveness in Puerto Rico after it became a commonwealth in 1952. It is true that Congress had before it the Narcotic Drugs Import and Export Act in 1953, and in that year it passed an amendment to 21 U.S.C.A. § 171(a) (67 Stat. 506) re-defining the term "narcotic drug" with the sole purpose of making it clear that chemically synthesized drugs were included. See (1953) U.S.Code Cong. & Ad.News, p. 2277. At this time Congress was not concerned at all with the coverage of the Act in 21 U.S.C.A. § 171(b) or § 174.

For the reason above suggested, we attach little or no importance to the fact that the Congress, in enacting the Opium Poppy Control Act of 1942, in § 12 expressly referred to "Puerto Rico" as intended to be included in the coverage of the Act. 56 Stat. 1048, 21 U.S.C.A. § 188k.

Two other related statutes deserve to be noted. The Marihuana Tax Act of 1937 (50 Stat. 551), as originally enacted (see § 15, 50 Stat. 556) undoubtedly applied to Puerto Rico, referred to not specifically, but included in the general description of "insular possessions". Similarly, the Harrison Narcotics Act, so called, which was enacted first in 1914 (38 Stat. 785), applied in its original form to Puerto Rico, included obviously as one of the "insular possessions of the United States" in § 2(d). 38 Stat. 787.

Since both the latter statutes were tax measures, they were incorporated by Congress into the Internal Revenue Code in 1939. See 53 Stat. 269 et seq., 26 U.S.C.A. §§ 2550 et seq., 3220 et seq. It is evident from § 2564 and § 2603 that the Congress intended these acts to continue to be applicable in Puerto Rico under the inclusive reference to "insular possessions" as used in §§ 2563 and 2602.

In the revision of the Revenue Code in 1954, though this was after Puerto Rico had become a commonwealth, the Congress made no momentous change in the coverage of these provisions of law. See 68A Stat. 549 et seq., 26 U.S.C.A. § 4701 et seq. However, in a chapter on Definitions, there was added a new § 7701(c) reading: "Where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, references in this title to possessions of the United States shall be treated as also referring to the Commonwealth of Puerto Rico." This addition is without present significance since the Senate committee report expressly stated that its purpose was of a clarifying nature, "and does not change existing law." (1954) U.S.Code Cong. & Ad.News, p. 5271.

In 1956, after the case at bar arose, and therefore having no bearing on any present problems, Congress enacted the Narcotic Control Act of 1956, amending substantially both the provisions of the Internal Revenue Code of 1954 and of the Narcotic Drugs Import and Export Act. 70 Stat. 567. This amendment wrote a new provision into § 4774 of the Internal Revenue Code of 1954, as follows: "On and after the effective date of the Narcotic Control Act of 1956, the provisions referred to in the preceding sentence shall not apply to the Commonwealth of Puerto Rico unless the Legislative Assembly of the Commonwealth of Puerto Rico expressly consents thereto in the manner prescribed in the constitution of the Commonwealth of Puerto Rico for the enactment of a law." 70 Stat. 572. The Puerto Rican legislature promptly gave such consent, in Joint Resolution No. 1 approved July 25, 1956, 1 L.P.R.A. preceding Title 1. However, this amendment had no reference to the provisions of the Narcotic Drugs Import and Export Act, which remain applicable to Puerto Rico without the necessity of the legislature of Puerto Rico manifesting its consent thereto.

We shall refer briefly to other citations made by appellant. 34 Op.Atty.Gen. 550 (1925), holding that the reference in a particular statute to "insular possessions" did not include the Philippine Islands, was based upon an existing provision of law that "the statutory laws of the United States hereafter enacted shall not apply to the Philippine Islands, except when they specifically so provide, or it is so provided in this Act." 39 Stat. 547, § 5. And Gonzalez v. People of Porto Rico, 1 Cir., 1931, 51 F.2d 61, was rested upon the peculiar phraseology in the various sections of the Federal Food and Drugs Act.

If, as has above been made clear, the Congress had undoubted power to apply the Narcotic Drugs Import and Export Act to Puerto Rico, an additional persuasive reason for not imputing to the Congress an intention to render the Act inapplicable to Puerto Rico is the fact that provisions of the Act, for instance, 21 U.S.C.A. § 182(a), were enacted in pursuance of international treaty obligations assumed by the United States.

A judgment will be entered affirming the order of the District Court.