**CARIBTOW CORPORATION,**
**Petitioner,**

**v.**

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

**No. 73–1285.**

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1974.

Decided March 18, 1974.

Edelmiro Salas Garcia, Guaynabo, P. R., for petitioner.

Morton Hollander, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Stephen F. Eilperin, and Jean A. Staudt, Attys., Dept. of Justice, were on brief, for respondents.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

An employee of Caribtow, a Puerto Rican corporation, was killed while engaged in trying to move a crawler crane from a barge to a dock in Santurce, Puerto Rico. After investigation, the Secretary of Labor, acting pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (the Act), issued a citation and notice of a proposed fine of $700 to the corporation for a serious violation of its duty to furnish its employees with a safe place to work, in failing to provide a ramp or other safe method for moving the crane from barge to dock. 29 U.S.C. § 654(a)(1).[1] Caribtow, denying Congressional power to legislate concerning occupational safety in Puerto Rico, refused to post a statutory notice, 29 U.S.C. § 658(b), informing its employees of the citation, and of their right to participate as parties. The Administrative Law Judge, holding that Caribtow had by such breach forfeited its status as a party, dismissed its Notice of Contest and affirmed the citation and proposed penalty. The Occupational Safety and Health Review Commission affirmed and this petition for review followed.

The sole defense of Caribtow is that the Act cannot apply to Puerto Rico. The argument is not that the Act in terms does not apply, for the legislation could not be more specific: in its purpose—"to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources", 29 U.S.C. § 651(b); in its geographical coverage—"This Act shall apply to employment . . . in . . . the Commonwealth of Puerto Rico"; and in the functional coverage of "commerce" as being commerce "among the several states", 29 U.S.C. § 652(3), Puerto Rico being specifically included for purposes of the statute as a "state", 29 U.S.C. § 652(7). Nor is there any suggestion that the Secretary of Labor or the Commission failed to follow properly the procedures and standards of the Act. The argument is simply that, subsequent to the advent of Commonwealth status, Congress lacks power unilaterally to make new statutes applicable to Puerto Rico.

The present political status of Puerto Rico stems from Public Law 600, enacted by the Congress of the United States in 1950 "in the nature of a compact", and approved by the people of Puerto Rico in referendum in 1951. Pursuant to this law the people of Puerto Rico adopted a Constitution in 1952 and the Congress of the United States approved that Constitution and repealed part of the old Organic Act (the Jones Act of 1917). The remainder of the Organic Act was renamed the Puerto Rican Federal Relations Act, 48 U.S.C. § 731b et seq. Section 9 of the Puerto Rican Federal Relations Act, 48 U.S.C. § 734, provides in relevant part that: "The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter provided, shall have the same force and effect in Puerto Rico as in the United States. . . ." Caribtow does not allege that the Occupational Safety and Health Act is "locally inapplicable" in the sense meant in § 734. Indeed, it would be difficult to conceive of the fostering of the safety of workers as being other than supportive of the

---

[1] In its request for admission of facts, which was not contested by Caribtow, the Secretary of Labor alleged that Caribtow buys machinery and supplies from outside of Puerto Rico and sells construction materials and supplies to buyers located outside of the Commonwealth and that Caribtow is thus an "employer" within the meaning of the Act.

cultural and legal heritage of Puerto Rico.[2]

■■ Section 9 of the Puerto Rican Federal Relations Act provides unquestionably that federal legislation requires no prior consent of Puerto Rico. Nothing in the language or in the legislative history can realistically support any other conclusion.[3] Furthermore, the provision was, in identical terms, part of the Organic Acts; and under those Acts no such prior consent was ever required.[4] The fact that the Commonwealth now possesses its own Constitution, and is governed with the consent of its inhabitants, does not establish that it is now so independent of the federal government that it may ignore or nullify national legislation and exert powers in this regard that are denied to the states, each of which also possesses a constitution and a republican form of government. What is determinative here is that application of the Occupational Safety and Health Act to Puerto Rico is fully consistent with the "compact".

As this court said in Moreno Rios v. United States, 256 F.2d 68, 71 (1st Cir. 1958):

"Under the terms of the 'compact' to which the people of Puerto Rico have manifested assent, there remains in the Puerto Rico Federal Relations Act the important provision: 'The statutory laws of the United States not locally inapplicable . . . shall have the same force and effect in Puerto Rico as in the United States . . .'. 48 U.S.C. 734. Since the terms of the Narcotic Drug Import and Export Act would affect Puerto Rico in the same manner as they do the States of the Union, and since the problem dealt with is a general one, certainly not 'locally inapplicable' to Puerto Rico, it is clear that Congress has the power to apply the Act to Puerto Rico . . . ."[5]

Caribtow attempts to distinguish this and other cases by pointing out that they all dealt with laws enacted prior to 1952 and thus only established that laws

---

2. It should be added that the Commonwealth itself, through its Department of Labor, pursuant to 29 U.S.C. § 667(b), has submitted a notice of intent to submit a plan under which it would retain authority over working conditions subject to federal standards and has received several federal grants to help in developing such a plan, now in the review stage.

3. Referring to the bill which became Public Law 600, the Secretary of the Interior, in a letter to the Chairman of the Senate Committee on Interior and Insular Affairs, characterized the basic effects of Public Law 600 in this way:
   "Those sections of the Organic Act of Puerto Rico pertaining to the political, social, and economic relationship of the United States and Puerto Rico concerning such matters as the applicability of United States laws . . . would remain in force and effect and . . . would be referred to as the Puerto Rican Federal Relations Act. The sections of the organic act which section 5 of the bill would repeal are the provisions concerned primarily with the organization of the local executive, legislative, and judicial branches of the government of Puerto Rico and other matters of purely local concern."

U.S.Code Congressional Service p. 2685 (1950).

4. See Puerto Rico v. The Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937).

5. Accord, United States v. DeJesus, 289 F.2d 37 (2d Cir. 1961); Rodriguez Salgado v. United States, 277 F.2d 653 (1st Cir. 1960); Sanchez v. United States, 256 F.2d 73 (1st Cir. 1958); United States v. Carrion, 140 F.Supp. 226 (D.P.R.1956); Mitchell v. Rubio, 139 F.Supp. 379 (D.P.R.1956); United States v. Mejias, 131 F.Supp. 957 (D.P.R. 1955); Cosentino v. I. L. A., 126 F.Supp. 420 (D.P.R.1954); Arbona v. Kenton, 126 F.Supp. 366 (S.D.N.Y.1954); Carrion v. Gonzalez, 125 F.Supp. 819 (D.P.R.1954); see also Davis v. Trigo Bros. Packing Corp., 266 F.2d 174 (1st Cir. 1959); Detres v. Lions Building Corp., 234 F.2d 596 (7th Cir. 1956); In re Lummus Co. & Commonwealth Oil Refining Co., 195 F.Supp. 47 (S.D.N.Y. 1961); Mora v. Mejias, 115 F.Supp. 610 (D.P.R.1953); cf. Waterman S.S. Corp. v. Rodriguez, 290 F.2d 175 (1st Cir. 1961).

6. In a very recent case the District Court for the District of Puerto Rico has found the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq., applicable to Puerto Rico. Hodgson v. Un-

in effect in Puerto Rico before the compact remained so afterward.[6] But, passing the practical difficulty of distinguishing an "amendment" from a "new law", there are a number of reasons why the distinction proposed is of no substance. First, as we have noted, the legislative history of Section 9, and its prior existence in the Organic Acts of 1900 and 1917, militate against such an interpretation; and the language of its exceptions clause, "except as hereinbefore or hereinafter provided", also indicates that Section 9 is fully prospective. Secondly, no reason has been advanced why finding applicability to Puerto Rico of post-1952 legislation would do violence to the underlying reasoning of the cases dealing with pre-1952 legislation, nor can we think of any. Finally, to limit the cases in the way suggested by Caribtow, in the light of the clear language of Section 9, on which they were grounded, cannot be contemplated where no authority or persuasive reasoning or policy can be found to support such a result.[7]

Caribtow seeks to draw from a few congressional enactments that have specifically exempted Puerto Rico from coverage, or have made coverage optional with the Puerto Rican legislature, the general principle that Congress lacks power to do otherwise. This argument conveniently overlooks the fact that many more acts of Congress have been passed since 1952 either without such an exemption or with specific provisions making them applicable to the Commonwealth.[8] The fact that certain laws exclude Puerto Rico from the scope of their operation indicates no more than that Congress thought them "locally inapplicable" or otherwise inappropriate for the Commonwealth. And provision that a federal program operate in a jurisdiction only with the consent of that jurisdiction is not unique in Puerto Rico.[9] The Occupational Safety and

ion de Empleados de los Supermercados Pueblo, 371 F.Supp. 56 (D.P.R. Jan. 30, 1974).

7. Shortly after the Puerto Rican Federal Relations Act came into being, Chief Judge Magruder made the following relevant observation:

"Thus it is apparently recognized in the compact that Congress has reserved the power, without future amendment of the Puerto Rican Federal Relations Act, to enact general legislation applicable to Puerto Rico as well as to the rest of the United States. There seems to be no implied moral commitment that the Congress will extend to Puerto Rico the provisions of such general legislation only after consultation and manifestation of consent by the people of Puerto Rico. . . . . In enacting such legislation it would no more be necessary to obtain the consent of Puerto Rico than it would be to obtain the consent of the State of New York." Magruder, the Commonwealth Status of Puerto Rico, 15 U.Pitt.L.Rev. 1, 17 (1953).

8. Section 4774 of the Narcotic Control Act of 1956 provided that its application to Puerto Rico was conditioned upon consent by the Legislative Assembly of the Common-

wealth of Puerto Rico. See also Report of the United States—Puerto Rico Commission on the Status of Puerto Rico (1966) at 41, n. 31. And 48 U.S.C. § 751 excludes from operation in Puerto Rico the Interstate Commerce Act and the Safety Appliance Act. On the other hand, many more acts of Congress have been applied to Puerto Rico without any requirement of approval by the Legislative Assembly. See the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 802; the Rehabilitation Act of 1973, 29 U.S.C. § 780(b); Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 402(b); Public Works and Economic Development Act of 1965, 42 U.S.C. § 3216; Public Broadcasting Act of 1967, 47 U.S.C. § 397; Consumer Product Safety Act (1972), 15 U.S.C. § 2052(10); Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 721(a); Federal Insecticide, Fungicide and Rodenticide Act of 1972, 7 U.S.C. § 136; Economic Opportunity Act of 1964, 42 U.S.C. § 2949. See also Report of United States—Puerto Rico Commission, supra at 42.

9. See for example the optional nature of state participation in the categorical assistance programs under the Social Security Act.

Health Act is one of those pieces of legislation which the Congress can make and has made applicable to the Commonwealth explicitly, and with no provision for prior local consent. That it has done and may again do otherwise with other legislation is beside the point.[10]

■ One final point deserves some discussion. 48 U.S.C. § 751, part of the Puerto Rican Federal Relations Act, provides that the Interstate Commerce Act and the Safety Appliance Act shall not apply to Puerto Rico. Caribtow argues that this provision means that all enactments dealing with interstate commerce cannot apply to the Commonwealth, and that, since the Occupational Safety and Health Act is phrased primarily in terms of interstate commerce, the ban contained in § 751 extends to it. But § 751 does not in terms or by any reasonable implication mean any more than what it clearly says: that two particular laws shall not operate in Puerto Rico.[11]

We conclude, therefore, that the Occupational Safety and Health Act of 1970 applies to Puerto Rico, and that the Secretary of Labor and the Occupational Safety and Health Review Commission acted well within their authority.

The order of the Commission is affirmed.

10. The question whether, under the "compact", the Congress has power to enact legislation dealing with purely local Puerto Rican matters where it could not do so as to a state is not in issue here, since the application of the Occupational Safety and Health Act in this case was consistent with application of the Act to a state. *Compare* Hodgson v. Union de Empleados de los Supermercados Pueblo, 371 F.Supp. 56 (D.P.R. Jan. 30, 1974) ; Liquilux Gas Services of Ponce, Inc. v. Tropical Gas Co., 303 F.Supp. 414 (D.P.R.1969). *See*, Magruder, The Commonwealth Status of Puerto Rico, *supra*, 17–18.

11. Although this court said in Buscaglia v. Ballester, 162 F.2d 805 (1st Cir.), cert. de-

nied, 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393 (1947) that the Interstate Commerce Clause does not apply to Puerto Rico, we have no occasion here to reconsider that opinion in the light of intervening events. Under either that clause, or the Territorial Clause, Art. IV, § 3, cl. 2, *see* Puerto Rico v. The Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937), it is clear that Congress has the power to apply the Occupational Safety and Health Act to Puerto Rico.

It has also been suggested that the "compact" itself is a source of power for the application to Puerto Rico of federal legislation which is consistent with the compact. *See* Hodgson v. Union de Empleados de los Supermercados Pueblo, *supra*.