In re Manuel Diaz SEGARRA and Cruz Salgado De Diaz and the Conjugal Partnership Established Between Them, Debtors.

Manuel Diaz SEGARRA and Cruz Salgado De Diaz; The Conjugal Partnership Established Between Them; Lina Fonte in Representation of Unsecured Creditors as a Class and the Creditors' Committee, Plaintiffs,

v.

BANCO CENTRAL Y ECONOMIAS;
John Doe Insurance Company, Defendants.

Bankruptcy No. B–80–00490 (B).
Adv. No. 81–0109.

United States Bankruptcy Court,
D. Puerto Rico.

Oct. 6, 1981.

Edilberto Berríos Pérez, Robert J. Griswold, Juan T. Peñagaricano and Alberto Lozada Colón, San Juan, P. R., for plaintiffs.

Noel González Miranda, San Juan, P. R., for defendants.

## OPINION AND ORDER

W. H. BECKERLEG, Bankruptcy Judge.

Plaintiffs, consisting of debtors, a creditor, and the creditors committee have filed these adversary proceedings against the defendant bank and an unknown insurance company alleging, in essence, that the defendant bank acted improperly in its relationships with debtor and seeking a variety of relief against the bank including damages.

The bank has moved to dismiss the complaint on the following grounds:

1. Lack of jurisdiction over the subject matter

2. Failure to state a claim upon which relief may be granted

After hearing the parties, the matter was submitted upon memoranda. The Attorney General of the United States was advised pursuant to Bankruptcy Rule 724, but has declined to intervene.

The first objection raised by defendants is divided into two parts; the first alleges that Title 11 of the U.S. Code is not applicable to the debtor. The argument is that Sec. 109(a) provides that "only a person that resides in the United States, or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title", and that defendant have no domicile, etc., "in the United States". The second part of the jurisdictional argument is that the Bankruptcy Reform Act of 1978 has unconstitutionally vested Article III judicial power in the Bankruptcy Court's non-tenured judges and thus the Bankruptcy Court is barred from exercising such jurisdiction.

The second argument is to the effect that neither an individual creditor, on her own behalf or on behalf of unsecured creditors as a class, nor the creditors' committee have standing to bring this suit, for the authority to assert such causes of action lies with the trustee, or the debtor in possession in this case.

We, hereafter, take up these arguments separately.

*Whether the Bankruptcy Reform Act extends to Puerto Rico.*

■ As the defendants point out, Sec. 109(a) provides that only a person that resides in the United States, or has a domicile, a place of business, or property in the United States, may be a debtor under Title 11.

The term "United States" is not defined in Title 11, nor is the term "state." Reportedly, Congress has considered an amendment to the Bankruptcy Act to define the terms "state" and "United States" so as to include Puerto Rico, but, to date, neither of the technical amendment bills[1] has been enacted.

There is no doubt that Congress has sometimes treated Puerto Rico as a "State" and sometimes it has not; sometimes Puerto Rico is considered part of the United States, and sometimes it is not.[2] And sometimes, Congress does not say anything, and the courts have to decide.

The federal judiciary in numerous cases has determined that Puerto Rico is sovereign over matters not ruled by the Constitution and thus has treated Puerto Rico as a State. *Mora v. Mejias*, 115 F.Supp. 610 (1953), 206 F.2d 377 (1953); *Marin v. U.P.R.*, 346 F.Supp. 470 (1972); *Calero-Toledo v. Pearson Yacht*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976).

The policy of treating Puerto Rico on the same basis as a state for the purpose of determining if federal legislation is applicable in Puerto Rico also has been codified in Section 9 of the Federal Relations Act (48 U.S.C.A. § 734 which provides:

"The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States . . ."

Under Sec. 9, a variety of federal laws have been held applicable in Puerto Rico including the Narcotics Drugs Act[3], Civil Rights Act[4], the National Labor Relations Act[5], and the Bankruptcy Act of 1898[6]. It is clear from Sec. 9 that federal legislation requires no prior consent of Puerto Rico to be applicable here. *Caribtow Corp. v. Occupational Safety & Health Comm.*, 493 F.2d 1064 (CCA-1, 1974), cert. den. 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55.

The phrase "not locally inapplicable" appears to mean that laws enacted by the federal government apply in Puerto Rico unless local conditions are such that they should not apply; Section 9 thus refers "to general acts that are without special application, but are broad enough to apply" to Puerto Rico[7].

A federal bankruptcy law has been in force in Puerto Rico for over 70 years,[8] and is unlikely that Congress would have exempted or eliminated Puerto Rico from the Bankruptcy Reform Act of 1978 without at least commenting on the change; yet the legislative history is completely empty of any suggestions to this effect. On the contrary, the sole legislative history which mentions Puerto Rico indicates Congress considered the cost of establishing or maintaining a bankruptcy judge in Puerto Rico

---

1. S. 658 of the 65th Congress and S. 863 of the 66th Congress.

2. Sidall, *Inclusion of Puerto Rico in Definition of "State"*, 39 Revista, Colegio de Abogados, 687 (1978).

3. *Moreno Rios v. U.S.*, 256 F.2d 68 (CCA-1, 1958).

4. *U.S. v. Villarin*, 553 F.2d 723 (CCA-1, 1977).

5. *NLRB v. Security Nat. Life Ins. Co.*, 494 F.2d 336 (CCA-1, 1974).

6. *Highland Realty, Inc. v. Superior Court*, 103 D.P.R. 306 (1975). Here the Supreme Court of Puerto Rico expressly stated that they did not consider the Bankruptcy Act of 1898 locally inapplicable in Puerto Rico.

7. Sidall, supra, p. 689; Leibowitz, *The Applicability of Federal Law to the Commonwealth of Puerto Rico*, 56 Geo. L.J. 219, 235 (1967).

8. See *Ex parte Coll*, 11 D.P.R. 51 (1906).

under the various proposed bills[9]. Since the Bankruptcy Reform Act of 1978 was adopted Congress has approved budgets for the operation of a Bankruptcy Court in Puerto Rico, the Administrative Office of U.S. Courts has staffed and supported such a court, and the Bankruptcy Court itself has received and processed over 1400 cases. We have been unable to find any indication whatsoever on the operational side of the court that would indicate that anyone in the vast bureaucracy of the federal government has had the slightest doubt that Congress did not intend the Bankruptcy Code to extend to Puerto Rico. These practical considerations support unequivocally our earlier expressed legal opinion that the Bankruptcy Reform Act of 1978 is a statutory law not locally inapplicable and thus extensive to Puerto Rico by virtue of Sec. 9 of the Federal Relations Act.

Congress' proposed Technical Amendments bills in no way changes this result. Congress proposed in the 96th Congress (S. 658) legislation to make certain technical, drafting, and minor sustantive amendments to the ... Bankruptcy Reform Act of 1978.[10] The 96th Congress didn't act, and the 97th Congress has similar legislation before it[11]. The latest proposal would add to Sec. 101 a definition of the "United States" as follows:

> "(43) 'United States', when used in a geographic sense, includes all locations

where the juridical jurisdiction of the United States extends, including territories and possessions of the United States."[12]

It also would add to Sec. 101 a new definition, as follows:

> "(39) 'State' includes the District of Columbia and Puerto Rico, except for the purpose of who may be a debtor under Chapter 9 of this title."[13]

It appears to us that if Congress does adopt the above amendments, they will have added nothing other than a clarification to the law[14].

We, therefore, conclude that the first objection of the defendant is without merit.

*Whether the Bankruptcy Reform Act has Unconstitutionally Vested Article III juridical powers in the Bankruptcy Court's non-tenured judges.*

We are advised that the U.S. District Court for the District of Minnesota has decided this question by an order of April 23, 1981[15] of U.S. District Judge Miles W. Lord. This is apparently the first occasion on which this question has arisen; our Circuit Court has not had occasion to consider the question. The views of another Circuit are not necessarily a precedent for us, but in the present case, since the opinion was not published, and apparently not written,[16] it could not even be considered[17].

---

9. Senate Report No. 95–989, p. 176, U.S.Code Cong. & Admin.News 1978, 5787, on Bankruptcy Reform Act of 1978.

10. Senator DeConcini's remarks of March 14, 1979 on the introduction of the bill to the Senate.

11. S. 863, H.R. 3705.

12. Sec. 1(n) of S. 863.

13. Sec. 1(k) of S. 863. Chapter 9 of Title 11 deals with municipalities and does not concern us here.

14. The Bankruptcy Judge in the Bankruptcy Court in the District of Columbia will not be surprised to find that Congress considers the District part of the United States, and his Bankruptcy Court will not be reopened since it has been operating all the time.

15. *In the Matter of Northern Pipeline Construction Co., debtor-Northern Pipeline Construction Co. v. Marathon Pipeline Company.* Reportedly the matter is on appeal to the Court of Appeals for the Eight Circuit.

16. The opinion of the Bankruptcy Judge has been published at 6 B.C.D. 1277; subsequent to the preparation of this opinion we received a copy of the District Court's Memorandum-Opinion published in, 12 B.R. 946, 7 B.C.D. 1373; with all respect, we believe it has errored.

17. *Jones v. Supt. Virginia State Farm,* 465 F.2d 1091 (CA–4); *State v. Fitz Patrick,* 5 Wash. App. 661, 491 P.2d 262 (1972); *Bumiller v. Walker,* 95 Ohio St. 344, 116 N.E. 797.

First off, we must determine whether it is necessary to proceed to the constitutional issue for we should avoid it if not necessary. Unfortunately, it is necessary.

This is a complaint to collect damages and to obtain other relief from a bank for the bank's allegedly improper conduct in handling debtors' properties and business. It is not a cause of action that debtors' acquired because they are debtors in this bankruptcy court, nor a special bankruptcy action created by the Bankruptcy Code. Rather it is a cause of action that debtors had before they came to this court and a cause of action which while filed here could have been filed in a non-bankruptcy forum. It is an example of what would have been described as a plenary action under the Bankruptcy Act of 1898. As such, under the Act of 1898, this court's jurisdiction, being summary, would not have covered a case such as the present, unless the bank did not object to the court's summary jurisdiction. Sec. 2(a)(7). The rule covering the situation was that objections to jurisdiction were waived if not made by timely motion or answer, whichever was first served. Bankruptcy Rule 915.

Defendant has not answered; they have moved to dismiss and their objection though presented as a constitutional issue may be also considered a Rule 915 objection, and were this an Act of 1898 proceeding, we would have to determine whether defendant has consented to our jurisdiction. Here the defendant has not filed a claim nor an answer, has requested additional time "to respond to the complaint", has been present at scheduled pre-trial, has requested a continuance of the pre-trial, and has opposed the removal of a local court action (which removal was subsequently withdrawn)[18]. It appears to us that defendant has clearly, consistently, repeatedly and, as the Rule requires, timely objected to the jurisdiction of this court, and as the matter is one of plenary jurisdiction, under the 1898 Act we would have had no choice but to dismiss the case.

We are not dealing, however, with a proceeding brought in a case filed under the 1898 Act, but a proceeding brought in a case filed under the Bankruptcy Reform Act of 1978, in the consideration and enactment of which Congress specifically wrestled with, considered, and attempted to solve the recognized and lamented problems of the lost time, delayed justice, and frustrated bar resulting from the Bankruptcy Court's inability to hear and decide plenary disputes and the resulting division of the juridical business of bankruptcy cases[19].

Congress considered the Constitutional problem of creating a court without tenured judges[20]. The United States Constitution in Article I defines the power of the Legislature[21] while Article III defines the powers of the Judiciary[22].

Congress, through Chairman Peter J. Rodino of the Subcommittee on Civil & Consti-

**18.** In their opposition to the removal, defendants also raise the constitutional issue.

**19.** See, for example, the discussion of the Bankruptcy Court's jurisdiction in House Report 95–595, pp. 43–48; also Senate Report 95–989, pp. 17–18.

**20.** House Report 95–595, pp. 23–39.

**21.** "Art. I, (1) The Congress shall have the Power. . .

"(4) To establish a uniform Rule of naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

. . . . .

"(9) To constitute Tribunals inferior to the Supreme Court;

. . . . .

"(18) To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Offices thereof."

**22.** "Art. III.

"Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior Courts, shall hold their offices during good Behavior, and shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office."

tutional Rights of House Committee on the Judiciary requested the opinion of a number of constitutional law experts on the constitutionality of the proposed bankruptcy courts, receiving in reply a variety of learned opinions[23]. Numerous hearings were held, and, of course, the entire matter had been under study and consideration since 1971. Whatever may be said of Congress' solution to the problem, it cannot be said that Congress was uninformed.

What Congress did was to amend the Federal Judicial Code to create a new court[24], a court of the United States[25], and to proceed to define the jurisdiction of this new court to not only include exclusive jurisdiction of bankruptcy cases but also original, but not exclusive, jurisdiction "of all proceedings arising under title 11 or arising in or related to cases under title 11"[26]. This greatly expanded bankruptcy jurisdiction, which has been referred to generally as "pervasive", was given to the bankruptcy courts, in the words of Congress, "in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction..."[27].

It is of interest that although Congress had seriously considered the creation of a separate and independent Bankruptcy Court, the statute as finally enacted gave the new bankruptcy jurisdiction to the district courts,[28] provided that the new Bankruptcy Courts would be an adjunct of the district courts[29], and that the new Bankruptcy Courts shall exercise all of the bankruptcy jurisdiction conferred on the district courts[30].

No one has, or is likely to, argue that the district courts cannot exercise the jurisdiction conferred by the statute; the district courts historically, at least since 1841, have been the bankruptcy courts of the nation[31].

The problem arises from 28 U.S.C. § 1471(c) which provides that the bankruptcy court shall exercise all of the jurisdiction conferred by Sec. 1471 on the district courts. Sec. 1471(c), however, must be read in conjunction with 28 U.S.C. § 151(a) which creates the bankruptcy court and creates it "as an adjunct to the district court for such district." Congress cannot be accused, therefore, of taking jurisdiction away from the district courts; their crime, if any, is the lesser one of directing how (and where) the district court's jurisdiction shall be exercised. In the light of 80 years experience with the then existing bankruptcy system, and as a result of their own investigations Congress felt that modernization of both the bankruptcy law and bankruptcy courts was necessary.

"There has been a steady growth in the number of bankruptcies, both consumer and the more complicated business reorganization cases, over the last 20 years, and this steady growth has led to great stresses and strains in the bankruptcy system. The bankruptcy referee has gradually taken over the prime responsibility for the operation of the system from the Federal district judges.

"The hearings before the Subcommittee on Improvements in Judicial Machinery confirmed that revision was necessary, and the bill is the attempt to upgrade and modernize our bankruptcy courts and also the law which they must apply in the bankruptcy area."—Senate

---

**23.** Appendix II, House Report 95–595, pp. 63–88.

**24.** Sec. 201 of the Bankruptcy Reform Act added a new Chapter 6 to Title 28 U.S. Code, and *new Section 151 of Title 28 created the new court.*

**25.** 28 U.S.C. § 451.

**26.** 28 U.S.C. § 1471(a) and (b).

**27.** Senate Report No. 95–989, p. 17.

**28.** 28 U.S.C. § 1471(a).

**29.** 28 U.S.C. § 151(a).

**30.** 28 U.S.C. § 1471(c).

**31.** Sec. 1(10) of the Bankruptcy Act of 1898 provided that "Courts of Bankruptcy "shall include the United States district courts and the district courts of the Territories and possessions; See also the Bankruptcy Acts of 1841 and 1867.

Report No. 95–989, p. 2–3, U.S.Code Cong. & Admin.News 1978, 5788–5789.

"The Bankruptcy Commission found, and hearings before the Subcommittee in Civil and Constitutional Rights confirmed, that the most severe problem in the bankruptcy administration was the court system. The problem consists of two facets. First, the bankruptcy court today is not truly and completely a court. It is not independent. It must operate under the supervision of an unconcerned district court. This supervision has hampered bankruptcy court operations both administratively and substantively. This bill gives the bankruptcy court the independence it needs to operate in today's complex bankruptcy world.

"Second, the bankruptcy judge, because of the duties imposed upon him under the Bankruptcy Act, must take an active role in supervising and administering a bankruptcy case... The bill removes many of the supervisory functions from the judge in the first instance and transfers most of them to the trustee and to the United States trustee and involves the judge only when a dispute arises. Because the judge no longer will have to take an active role in managing bankruptcy cases, the bankruptcy court should become a forum that is fair in fact and in appearance as well."—House Report 95–595, p. 4, U.S.Code Cong. & Admin.News 1978, 5965.

The literature on the need for revision of the bankruptcy law and court structure is extensive, and the sources considered by Congress were many. There is no need to attempt further to review or summarize it here; the point to be noted is that Congress also considered this phase of the problem in depth.

If we consider Congress' solution to the problems, the creation of the United States Bankruptcy Court with its pervasive jurisdiction, in the light of Art. I and III of the Constitution alone, we must sympathize with one of the Constitutional Law professors who wrote Congress that this phase of the law is such a mess "that medieval theologians would be as reliable a source of guidance on it as modern professors" [32]. But there is throughout the Congressional Reports on the bill and the case law a recognition that there is a constitutional difference between an Article I court and an Article III court and difficulties in drawing a line of demarcation by no means permits us to assume the difference away.

It has been suggested that tenure is a fundamental difference, but this argument was rejected in *Ex parte Bakelite Corporation*, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1928) [33], where the Supreme Court pointed out whether a court is a legislative or a constitutional court depends upon the power under which the court was created and in the jurisdiction conferred. Nor, of course, does tenure carry with it some magical property whereby the recipient is transfigured into a more perfect jurist; innumerable judges work without the benefit of tenure and their competency stands up well when matched with that of tenured judges. What tenure does is to give the judge "maximum freedom from possible coercion or influence by the executive or legislative branches of the Government" [34].

The Constitution contains numerous examples of rights guaranteed to those accused of crimes [35], but it is unlikely, in our opinion, that a trial by a tenured judge would be considered as a constitutional right to which an accused is entitled [36].

32. Ltr. of Charles Alan Wright, McCormick Professor of Law, University of Texas; House Report No. 95–595 at p. 87.

33. While tenure is required for Constitutional court judges, judges are not judges of Constitutional courts because they have tenure. One who has been a citizen of the United States for seven years and who has attained the age of twenty five may be a member of the House of Representatives, but not because of his age.

34. *U.S. v. Quarles*, 350 U.S. 11, 16, 76 S.Ct. 1, 4, 100 L.Ed. 8 (1955).

35. Fifth, Sixth, Seventh, and Eighth Amendments as obvious examples.

36. We find no case so holding.

The Art. III requirement is rather a directive to Congress that when it creates Constitutional Courts the judges thereof must have tenure. When Congress creates an Art. I Court, it has no such restriction on it, and the judges of an Article I Court may be tenured or not as Congress deems appropriate [37]. There have been created by Congress, of course, numerous courts under Art. I of the Constitution including the so-called territorial courts, the Court of Claims, and the District of Columbia courts among others. The capacity of these legislative courts to hear and determine cases brought before them and to exercise plenary jurisdiction is long established.

We suggest that if the pervasive jurisdiction of Article I territorial courts can be sustained on the ground that they operate in a limited geographical area [38], then the requirement of tenure is not absolute; the bankruptcy courts also operate in a limited area of the law that prescribed by 28 U.S.C. § 1471 exercise only in that special and restricted field their jurisdiction; if special needs justify the non-tenured territorial courts, the special needs of bankruptcy are equally important.

To suggest that Congress has bestowed upon the bankruptcy courts the judicial power of the United States that Article III has vested the judicial power in the Supreme Court simply is incorrect. The "judicial power" which "We the People of the United States" vested by way of Article III in the Supreme Court cannot be diminished by Congress. As to the inferior courts which Congress may create under Article III, they derive their "judicial power" and their jurisdiction from Congress, and Congress may give, withhold, or restrict such jurisdiction to these inferior courts at its discretion, within the limits of the Constitution [39]. Just as Congress may give "judicial power" and jurisdiction to the inferior federal courts, so, it may in the same statute confer jurisdiction on the state courts, whether the judges thereof are tenured or not [40]. Even in the field of bankruptcy, where federal legislation has preempted the field, Congress can authorize a trustee to sue in the state courts [41]. The state court cannot refuse to take jurisdiction of an action based on Federal law [42], and the state court must enforce the federal right even though it feels it is contrary to state policy [43].

If Congress can authorize non-tenured territorial judges and non-tenured State judges to hear and determine federally created rights, we believe it can authorize the bankruptcy court to do the same thing.

It would appear that Congress in adopting the Bankruptcy Reform Act of 1978 and in amending Title 28 of the United States Code to create the United States Bankruptcy Court and granting it "pervasive" jurisdiction deprived no litigant of any constitutionally guaranteed right, and when this legislation is considered in the light of Congress' concern and deep study of the problems of administering the bankruptcy system and that system's long history, we are of the opinion that the presumption of constitutionality of any Act of Congress is appropriate and sustained in this case.

Without doubt; there are unanswered questions concerning the Bankruptcy Court; Congress has called it an "adjunct" to the district court. What an "adjunct" is has

**37.** *Ex parte Bakelite Corp.*, supra, 279 U.S. at p. 449, 49 S.Ct. at p. 412.

**38.** *Palmore v. U. S.*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

**39.** *Kline v. Burke Construction Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

**40.** See, for example, the Fair Labor Standards Act; the Bankruptcy Act of 1898–§§ 60(b), 67(e), 70(e)(3); the Bankruptcy Reform Act of 1978—§ 241(a); the Merchant Marine Act (Jones Act).

**41.** *Claflin v. Houseman*, 93 U.S. 130, 23 L.Ed. 833 (1876).

**42.** *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

**43.** *Mondou v. New York, N.H. and H.R. Co.*, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912).

not been defined [44], but any interpretation that would support a common bond between the U. S. District Court and this court is an additional argument to sustain our pervasive jurisdiction.

*Standing of Creditors and Creditors' Committee To Bring This Action.*

 Defendant has also moved to dismiss the action for failure to state a claim upon which relief can be granted; the argument is that neither plaintiff Lina Fonte, on her own behalf or on behalf of the unsecured creditors as a class, nor the creditors' committee have standing to bring this suit.

We agree.

It is the trustee who is the representative of the estate and who has the capacity to sue and be sued, Sec. 323. A debtor in possession has all of rights and powers and performs all of the functions and duties of a trustee, Sec. 1107. However, these duties and powers are not granted to individual creditors nor to creditors' committees, Sec. 1103(c). Absent specific authority conferred by the court, the Creditors' Committee has no authority to sue on behalf of the debtor nor on behalf of the debtor's estate; our attention is directed to no such authorization in this case, and as plaintiff-debtors are parties and have legal representation such authorization is neither required nor desirable. We do not understand that Congress in granting this court its pervasive jurisdiction intended to create new causes of action, but only to provide for an additional forum where existing causes might be heard.

Sec. 1109(b) provides that various entities including a creditor and a creditors' committee may appear and be heard on any issue in case. This section permits their intervention during the development of a Chapter 11 case when plans are being negotiated, the business conduct of a debtor being investigated, and the need for a trustee considered; this is the meat and pota-

toes of a Chapter 11. However, Congress has added to this standard bill of fare what we call adversary proceedings and has provided by creating our pervasive jurisdiction that they, too, may be heard by the Bankruptcy Court. But we do not read in the act or anywhere else that Congress intended in expanding our jurisdiction to create new causes of action in favor of creditors and committees. To the contrary, the Congressional history indicates that Congress was solely interested in providing an additional forum where existing causes might be heard. Thus Congress hoped to reduce the delays resulting from the prior division of the juridical business of bankruptcy courts [45]. Sec. 1109(b) applies to cases and not to proceedings.

Nor does the fact that the trustee may be exercising a right which belongs to a creditor, permit the creditor to intervene in the proceeding. Sec. 544 grants to the trustee the rights and powers of a judicial lien creditor, a judgment creditor with an unsatisfied execution, and a bona fide purchase of real property. These "strong arm" provisions help a trustee to avoid certain obligations of a debtor for the benefit of all creditors; Congress has provided that the trustee may exercise these rights, but did not extend to the creditor the right to intervene.

As to plaintiffs Lina Fonte and the Creditors' Committee, the motion to dismiss is granted on the ground they are not proper parties.

The other grounds for dismissal raised by defendant, as heretofore indicated, are without merit and are dismissed.

As debtors remain as plaintiffs in these proceedings, there now appears no reason why discovery should not go forward and any stay previously entered as to discovery by plaintiffs-debtors or by defendant is hereby vacated.

**44.** Chief Judge Hernán Pesquera, of the U. S. District Court for the District of Puerto Rico, has referred to the Bankruptcy Court as a satellite of the U. S. District Court. In many respects this term appears more appropriate than "adjunct".

**45.** See footnote 19.