UNITED STATES of America, Appellee,

v.

Tomas VILLARIN GERENA,
Defendant, Appellant.

No. 76–1468.

United States Court of Appeals,
First Circuit.

Argued Feb. 11, 1977.

Decided April 29, 1977.

John L.A. de Passalacqua, Isla Verde, P. R., with whom Victor Miguel Casal and Santos P. Amadeo, Santurce, P. R., were on brief for defendant, appellant.

Marie E. Klimesz, Atty., Dept. of Justice, Washington, D. C., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R.,

J. Stanley Pottinger, Asst. Atty. Gen., and Walter W. Barnett, Atty., Dept. of Justice, Washington, D. C., were on brief for appellee.

Before COFFIN, Chief Judge, INGRAHAM *, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

INGRAHAM, Circuit Judge.

Tomas Villarin Gerena of the Puerto Rico Police Force struck a private citizen numerous times and arrested him without probable cause. He was convicted by a jury for violation of 18 U.S.C. § 242.[1] The trial court sentenced him to two years probation conditioned upon his resignation from the police force.[2] On appeal Villarin contests (1) the applicability of § 242 in the Commonwealth of Puerto Rico, and (2) the requirement that he leave the police force. We affirm.

Appellant moved to dismiss the indictment for lack of jurisdiction under § 242. His claim that the statute does not apply touches upon the relationship of the Commonwealth and our national government. Because many questions about this relationship are unresolved, we approach the jurisdictional issue with a scalpel rather than a bludgeon.

█ We resolve a threshold question by holding that appellant's victim, Jorge Osvaldo Zambrana Roche, was deprived of the exercise of "rights, privileges, or immunities secured or protected by the Constitution or laws of the United States," which is a prerequisite to a § 242 violation. Freedom from arrest without probable cause and from police violence are fundamental constitutional rights. They apply in Puerto Rico as forcefully as elsewhere. Cf. Examining Board of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 599–600, 96 S.Ct. 2264, 49 L.Ed.2d 65 n. 30 (1976). Acevedo Montalvo v. Colon, 377 F.Supp. 1332, 1335–43 (D.P.R. 1974). Like the Supreme Court, we have no need to decide whether the Fourth Amendment's protection against unreasonable arrest and the Fifth Amendment's due process clause apply directly or are funneled through the Fourteenth Amendment. Id. 426 U.S. at 601, 96 S.Ct. 2264. Because this is so, we do not consider whether a broad reading of 48 U.S.C. § 737 might also give Villarin's victim a federal remedy.

█ We now proceed to the jurisdictional claim briefed by the parties. In 1866, when the Thirty-ninth Congress enacted the predecessor statute to § 242,[3] and in 1870, when the Forty-first Congress extended it to "any inhabitant of any State or Territory,"[4] Puerto Rico was a Spanish possession. However, "pre-acquisition" statutes are presumed to apply to United States territories. Puerto Rico v. Shell Oil Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937). In that case the Supreme Court held:

". . . When the Sherman Act was passed (1890), we had no insular dependencies . . . . Certainly, Congress at that time did not have Puerto Rico in mind. But that is not enough. It is necessary to go further and to say that if the acquisition of that insular dependency had been foreseen, Congress would have so varied its comprehensive language as to exclude it from the operation of the act."

---

* Of the Fifth Circuit, sitting by designation.

1. 18 U.S.C. § 242 provides:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life."

2. The Commonwealth is served by a single police force.

3. Civil Rights Act of April 9, 1866, § 2, 14 Stat. 27.

4. Act of May 31, 1870, § 17, 16 Stat. 144.

*Shell Oil Co., supra*, at 257, 58 S.Ct. at 169. We cannot believe that Congress intended to except the Territory of Puerto Rico from the operation of § 242. Appellant offers no reason why Congress would have withheld from Puerto Rico the protection of a statute designed to deter the misuse of official authority.

The elevation of Puerto Rico to Commonwealth status did not render § 242 inapplicable. Section 9 of the Puerto Rican Federal Relations Act, 48 U.S.C. § 734, is a general savings clause which states that United States statutes "not locally inapplicable" have equal force and effect in Puerto Rico. In *Examining Board, supra*, the Supreme Court held that 28 U.S.C. § 1343(3)[5] is operative in Puerto Rico. The United States District Court for the District of Puerto Rico may therefore entertain civil suits for violations of 42 U.S.C. § 1983.[6] Section 1983 is the civil counterpart of 18 U.S.C. § 242. *See Monroe v. Pape*, 365 U.S. 167, 184–85, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). It would be anomalous to allow § 1983 suits but prohibit § 242 prosecutions. Both statutes vindicate federal rights and give governmental officials concrete reasons for respecting those rights. We think § 242 weathered the creation of the Commonwealth as sturdily as did §§ 1983 and 1343(3).

Moreover, in *Examining Board, supra*, 426 U.S. at 594, n. 26, 96 S.Ct. at 2277, the Supreme Court concluded that the federal district court in Puerto Rico "possesses the same jurisdiction as that conferred on the federal district courts in the several states." Further, the Court determined that this jurisdiction was "left undisturbed" by the creation of Puerto Rico's Commonwealth status. *Examining Board, supra*, at 594, 96 S.Ct. 2264. In order to adopt appellant's position, we would have to hold that the district court in Puerto Rico had its jurisdiction bifurcated in regard to protecting a victim of police illegality, dependent upon whether the action is instituted civilly or criminally. There is no support in *Examining Board* for such jurisdictional erosion.

Appellant has offered a few closely reasoned arguments which are intriguing but unpersuasive. First, he analogizes to *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), arguing that the Commonwealth, like the District of Columbia, is *sui generis*. *Carter* exempted the District of Columbia from the operation of § 1983, but *Examining Board* disposed of the contention that the Commonwealth should receive similar treatment:

"... We readily concede that Puerto Rico occupies a relationship to the United States that has no parallel in our history, but we think that it does not follow that Congress intended to relinquish federal enforcement of § 1983 by restricting the jurisdiction of the Federal District Court in Puerto Rico. It was observed in *Carter*, 409 U.S., at 427, [93 S.Ct., at 607] that Congress, in enacting the civil rights legislation with which we are concerned, recognized that it 'had neither the means nor the authority to exert any direct control, on a day-to-day basis, over the actions of state officials,' and that the 'solution chosen was to involve the federal judiciary.' Congress similarly lacked effective control over actions taken by territorial officials, although its

**5.** 28 U.S.C. § 1343 provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

.    .    .    .    .    .

"(3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of 'Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

**6.** 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

authority to govern was plenary.[28] The same practical limitations on Congress' effectiveness to protect the federally guaranteed rights of the inhabitants of Puerto Rico existed from the time of its cession and, after 1952, when Congress relinquished its control over the organization of the local affairs of the island and granted Puerto Rico a measure of autonomy comparable to that possessed by the States, the need for federal protection of federal rights was not thereby lessened. Finally, § 1983, by its terms, applies to Territories; Puerto Rico, but not the District of Columbia, obviously was one of these. Whether Puerto Rico is now considered a Territory or a State, for purposes of the specific question before us, makes little difference because each is included within § 1983 and, therefore, 28 U.S.C. § 1343(3).

[28] " 'It is true, of course, that Congress also possessed plenary power over the Territories. For practical reasons, however, effective federal control over the activities of territorial officials was virtually impossible. Indeed, "the territories were not ruled immediately from Washington; in a day of poor roads and slow mails, it was unthinkable that they should be. Rather, Congress left municipal law to be developed largely by the territorial legislatures, within the framework of organic acts and subject to a retained power of veto. The scope of self-government exercised under these delegations was nearly as broad as that enjoyed by the States . . . ." *Glidden Co. v. Zdanok*, 370 U.S. 530, 546, [82 S.Ct. 1459, 8 L.Ed.2d 671] (1962) . . . . Thus, although the Constitution vested control over the Territories in the Congress, its practical control was both "confused and ineffective," making the problem of enforcement of civil rights in the Territories more similar to the problem as it existed in the States than in the District of Columbia.' *District of Columbia v. Carter*, 409 U.S., at 430–431 [93 S.Ct. 602.]"

*Examining Board, supra,* 426 U.S. at 596–97 and n. 28, 96 S.Ct. at 2278. Appellant's argument is similarly ineffective with respect to § 242.

Appellant next argues that § 242 has undergone textual amendment since the

creation of the Commonwealth, but that the statute has not been amended to include Puerto Rico. He reasons that this omission, coupled with the direct reference to the Commonwealth in 18 U.S.C. § 245,[7] indicates that Congress intended to exclude Puerto Rico from the effect of § 242. Judge Magruder's observations are particular appropriate here:

". . . [W]hen Congress uses the term 'territory', this may be meant to be synonymous only with 'place' or 'area', and not necessarily to indicate that Congress has in mind the niceties of language of a political scientist who might say that Puerto Rico under its commonwealth status has ceased to be an unincorporated 'territory' of the United States.

. . . "If, then, the Congress originally intended to apply the Act to Puerto Rico, it would seem clear, in view of the general provision of the Federal Relations Act to the effect that the statutory laws of the United States not locally inapplicable shall have the same force and effect in Puerto Rico as in the United States, that it was not necessary for the Congress to alter specifically all outstanding statutes thereto previously applicable in order to continue their effectiveness in Puerto Rico after it became a commonwealth in 1952."

*Moreno Rios v. United States,* 256 F.2d 68, 71–72 (1st Cir. 1958). *Moreno Rios* is settled law and sensible doctrine.

We conclude that the district court had jurisdiction to try appellant.

■ The district court required Villarin to resign from the Puerto Rico Police Force during his probation. Appellant claims that this sentence constitutes an abuse of discretion, is cruel and unusual punishment and imposes unnecessary economic hardship upon his family since his only skills are in law enforcement. Because the district judge undoubtedly considered the facts

7. 18 U.S.C. § 245 provides, in pertinent part:
   "(a)(1) Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State, any possession or Commonwealth of the United States,

or the District of Columbia, from exercising jurisdiction over any offense over which it would have jurisdiction in the absence of this section . . . ."

which led to this prosecution, we think they deserve examination in our review of his sentencing decision.

Appellant was in uniform while on duty at the San Juan International Airport. He ordered fish at a mobile canteen. The victim Zambrana was buying a carton of milk. When appellant complained that he had not received the fish he had ordered, Zambrana told him that he had in fact been correctly served. Enraged, appellant followed Zambrana and cursed him. He grabbed Zambrana's arm, spilling milk over both of them. Villarin struck Zambrana, told him he was under arrest, and told him not to move while the appellant went to the squad car and got a nightstick. Zambrana neither resisted nor fled. Upon returning, Villarin hit Zambrana several times. When his victim called for witnesses, appellant threatened bystanders with arrest if they attempted to follow or intervene. He added that things would go worse for Zambrana if anyone reported the incident. At the station Villarin hit Zambrana at least twice more. In view of the complete absence of probable cause, a Commonwealth judge ordered Zambrana's release shortly thereafter. From these facts one can only conclude that a police officer administered a beating to a citizen because he was a busybody.

Officer Villarin further misused his position by promising to retaliate if anyone came to Zambrana's aid.

Although the discretion of the sentencing judge is never absolute, *United States v. Espinoza*, 481 F.2d 553 (5th Cir. 1973), it does include the right to couple probation with necessary and proper conditions. 18 U.S.C. § 3651;[8] *United States v. Fultz*, 482 F.2d 1, 4 (8th Cir. 1973). In this case appellant's position enabled him to batter Zambrana with impunity and to intimidate onlookers. There is a possibility that the appellant might lose his temper on a future occasion. We think the district court's condition bore a "reasonable relationship to the treatment of the accused and the protection of the public." *Porth v. Templar*, 453 F.2d 330, 333 (10th Cir. 1971). *See also United States v. Nu-Triumph*, 500 F.2d 594 (9th Cir. 1974).[9]

That any sentence may be a hardship to appellant's family is undeniable; the consequences of crime are rarely visited only upon the actor and the immediate victim. Nor do we think the sentence constituted cruel and unusual punishment. *Compare Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

The judgment of the district court is affirmed.[10]

8. 18 U.S.C.§ 3651 provides, in pertinent part:
    "Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best. . . .
    "The court may revoke or modify any condition of probation, or may change the period of probation. . . ."

9. There are two additional factors supporting the district court's requiring defendant to resign from the police force. While restricting him to clerical duties might limit his opportunities to physically abuse others, it would not affect his ability to again commit unlawful administrative acts, e.g. swearing out false complaints; testifying falsely before a Grand Jury and at trial.

Finally, defendant counsel stated that other police officers had been convicted for 18 U.S.C. § 242 violations and "had served two year sentences, working in the police department." The district court could have believed that the repetition of such violations indicated that probation allowing continuance of employment had not sufficiently succeeded in deterring § 242 violations.

10. The requirement that appellant resign his position was stayed pending disposition of this appeal. We were informed at oral argument that subsequent to his conviction appellant suffered an accident while on motorcycle duty. His injuries are expected to keep him at desk work. Appellant argues that it is unlikely that he will be in a position to harm the public. This injury does not affect the district court's prior decision to require resignation. Our affirmance does not prejudice appellant's right to petition for modification of the terms of probation. 18 U.S.C. § 3651; *United States v. Manfredonia*, 341 F.Supp. 790, 791, n. 1 (S.D.N.Y.), aff'd per curiam, 459 F.2d 1392 (2d Cir.), cert.

denied, 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972). We intimate no opinion as to the proper course of action for the district court in that event.