# United States Court of Appeals
## For the First Circuit

No. 15-2145

UNITED STATES OF AMERICA,

Appellant,

v.

EDWIN MALDONADO-BURGOS,

Defendant, Appellee.

Howard, <u>Chief Judge</u>,
Torruella, Lynch, Dyk, Thompson, Kayatta, and Barron, <u>Circuit Judges</u>.

**ORDER OF COURT**
Entered: July 7, 2017

Appellant United States of America filed a petition for rehearing en banc, and, pursuant to First Circuit Internal Operating Procedure X(C), the appellant's petition for rehearing en banc has also been treated as a petition for rehearing before the original panel. The petition for rehearing has been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petitions for rehearing and rehearing en banc be denied.

**HOWARD**, **<u>Chief Judge</u>**, **and LYNCH, <u>Circuit Judge</u>, dissenting from the denial of rehearing en banc.** A panel of this court has held that the Mann Act's federal protections against sex trafficking of adults, <u>see</u> 18 U.S.C. § 2421(a), do not apply to conduct occurring solely within Puerto Rico. <u>United States</u> v. <u>Maldonado-Burgos</u>, 844 F.3d 339, 340 (1st Cir. 2016). In doing so, the panel has overruled our longstanding precedent in <u>Crespo</u> v. <u>United States</u>, 151 F.2d

44 (1st Cir. 1945), which squarely held that this provision of the Mann Act does apply to activity occurring solely within Puerto Rico. The United States rightly petitions for en banc review on the basis that the panel erroneously resolved a question of exceptional importance. The petition of the United States fails. In our view, the Supreme Court may wish to grant review of this decision, given its significance for the issues here, as well as for those beyond the particular question presented here, including for federal criminal law enforcement in Puerto Rico, for the use of proper rules of statutory construction, and for adherence to Supreme Court precedent.

We respectfully dissent from the denial of the petition for rehearing en banc. This question is about how courts determine Congress' intent as to the applicability of federal criminal statutes to Puerto Rico. The panel's decision here, in our view, both departs from binding Supreme Court precedent and abandons this court's settled method for addressing the application of federal statutes to Puerto Rico. The panel's decision is exceptionally important: it will not only eviscerate the protection of adult sex-trafficking victims whom the Mann Act expressly aims to protect but also adversely affect the federal government's ability to enforce other federal criminal statutes in Puerto Rico. It also results in the unlikely conclusion that Congress intended for the Mann Act to apply to child victims of intra-Puerto Rico sex trafficking, but not to victims of intra-Puerto Rico sex trafficking over 18 years of age.

## I.

Respectfully, in our view, the panel's decision gets congressional intent exactly backwards, and that has harmful consequences for the law and in practice. The decision's inconsistency with congressional intent is evident when we look at the Supreme Court's decision in Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016). The result is also inconsistent with recent congressional legislation using the term "territory" to include Puerto Rico. See Puerto Rico

Oversight, Management, and Economic Stability Act ("PROMESA"), Pub. L. No. 114-187, § 5(20), 130 Stat. 549, 552 (2016) (defining "territory" as including Puerto Rico). The panel's opinion also conflicts with even more longstanding precedent from the Supreme Court, see Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572 (1976), and from the First Circuit, see, e.g., Moreno Rios v. United States, 256 F.2d 68 (1st Cir. 1958), as to the application of federal statutory law to Puerto Rico. In the process, the panel has created a presumption, purportedly based on Cordova & Simonpietri Insurance Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36 (1st Cir. 1981), that Cordova itself never meant to create, and has used it to reach a conclusion Cordova does not sanction.

A.      The Panel's Decision Ignores Recent Supreme Court Law and Congressional Legislation on Puerto Rico

        The panel analyzes § 2421(a)[1] of the Mann Act by adopting a strong presumption that Congress would not want to treat Puerto Rico as a "Territory" for purposes of the Mann Act. Maldonado-Burgos, 844 F.3d at 347. But both Supreme Court and statutory law make it entirely reasonable to believe that Congress intends the opposite presumption. The Supreme Court has

---

[1]      18 U.S.C. § 2421(a) provides:

Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

Federal law does not outlaw prostitution itself: it is addressed rather to the transportation of persons for the described sexual activities. No state, except for Nevada (that is, certain counties within the state) has legalized prostitution. See Nev. Rev. Stat. § 244.345; Michael Martinez, What to Know About Nevada's Legal Brothels, CNN (Oct. 19, 2016), http://www.cnn.com/2015/10/14/us/lamar-odom-nevada-brothels/ ("Sex workers do business in every state, but only in Nevada is prostitution legalized, specifically in brothels."). Puerto Rico has not legalized prostitution.

decided, in a criminal case, that Puerto Rico's adoption of a constitution in 1952 and its transition to commonwealth status did not transform Puerto Rico into a state for the purposes of the Double Jeopardy Clause's dual-sovereignty doctrine. Sánchez Valle, 136 S. Ct. at 1875–76. This is because Puerto Rico's sovereignty still derives ultimately from Congress. Id. For the purposes of this constitutional analysis, the Court rejected the same arguments that informed the majority decision in Cordova. Compare id. at 1870 & n.2 (majority opinion), and id. at 1877–85 (Breyer, J., dissenting), with Cordova, 649 F.2d at 39–41.[2] Congress, we must assume, is well aware of Sánchez Valle. Sánchez Valle shows that it is entirely reasonable to believe that Congress would operate with the presumption that § 2421(a) would apply to Puerto Rico when it uses the term "Territory," unless it explicitly says to the contrary.

Indeed, in recent legislation, Congress has explicitly designated Puerto Rico as a "Territory." See PROMESA, § 5(20), 130 Stat. at 552 (defining "territory" to mean "Puerto Rico," "Guam," "American Samoa," "the Commonwealth of the Northern Mariana Islands," or "the United States Virgin Islands"). In light of the contrary result reached by the panel here, the question of Congress' intent with respect to the application of the Mann Act and other federal criminal statutes to Puerto Rico, is a question worthy of Supreme Court review.

B.      The Panel's Decision Conflicts with Longstanding Supreme Court and First Circuit Precedent on the Application of Federal Statutory Law to Puerto Rico

The panel's decision further conflicts with Supreme Court precedent, namely the Court's Examining Board decision on the application of federal statutes to Puerto Rico after it

---

[2]      It is true that Cordova's holding was based on an interpretation of the different treatment of states and territories for the purposes of a federal statute, and not the Constitution. But Cordova's reading of the Sherman Act was buttressed by constitutional reasoning, which has been changed by Sánchez Valle, and there is no need for Congress to later state the term "Territory" in order to continue the application of a statute to Puerto Rico.

- 4 -

achieved Commonwealth status.  In Examining Board, the Supreme Court addressed the question of whether Puerto Rico's change of status to a Commonwealth in 1952 stripped the United States District Court in Puerto Rico of jurisdiction under 28 U.S.C. § 1343.  See 426 U.S. at 594.  Looking to language, context, and purpose, id. at 580, the Court asked "whether Congress, by entering into the compact [with Puerto Rico], intended to repeal by implication the jurisdiction of the Federal District Court of Puerto Rico to enforce 42 U.S.C. § 1983," id. at 594.  The Court found no reason "to attribute to Congress an inclination to leave the protection of federal rights exclusively to the local Puerto Rico courts."  Id. at 595.  The question here should be similarly framed: Does anything about the change in Puerto Rico's political status in 1952 show that Congress intended to deprive Puerto Rico of the full extent of the federal protections against sex trafficking provided in § 2421(a)?

Cordova, by contrast to the panel decision in Maldonado-Burgos, in no way purported to depart from Examining Board.  Indeed, the Cordova decision took pains to emphasize that the analysis it undertook should be conducted statute-by-statute, see 649 F.2d at 38, and that its conclusion that section 3 of the Sherman Act no longer applied to Puerto Rico did not conflict with decisions holding that the application of other statutory provisions, such as 12 U.S.C. § 632, was not affected by the change in Puerto Rico's political status, see id. at 42 n.32 (finding no conflict with First Federal Sav. & Loan Ass'n of P.R. v. Ruiz de Jesus, 644 F.2d 910 (1st Cir. 1981), and noting that "[p]ost-Commonwealth Banking Act amendments did not reflect any congressional intent to narrow th[e] grant of jurisdiction [in 12 U.S.C. § 632]").  Yet the panel here used a contrary standard and reached an erroneous conclusion.

The Cordova panel was concerned with enforcement of antitrust laws and apparently concerned with possible preemption of local Puerto Rican antitrust statutes if the

Sherman Act applied.  See id. at 41–42.  No such problem of possible conflict between Puerto Rican anti-sex trafficking laws and enforcement of the Mann Act exists here.

This court's precedents, which the panel held inapposite, have used an analysis following that used in Examining Board.  See United States v. Villarin Gerena, 553 F.2d 723 (1st Cir. 1977); Moreno Rios, 256 F.2d 68.  Those cases stand for three relevant principles.  First, if a federal statute applied in full to Puerto Rico before Puerto Rico's shift to commonwealth status, the statute also applies in full after the shift, and Congress does not need to rewrite it.  See Villarin Gerena, 553 F.2d at 724–26; Moreno Rios, 256 F.2d at 71–72.  Second, it is unlikely that the change in Puerto Rico's political status meant that Congress wanted to deprive Puerto Rico of the full protections of any given federal statute.  See Villarin Gerena, 553 F.2d at 725–26.  Third, post-commonwealth amendments to a given statute that fail to address Puerto Rico's shift to commonwealth status do not show that Congress intended to change the statute's previous application to Puerto Rico.  See id. at 726; Moreno Rios, 256 F.2d at 71–72.  All three principles strongly argue for the full application of § 2421(a) of the Mann Act to Puerto Rico as a "Territory."[3] See United States v. Acosta-Martinez, 252 F.3d 13, 17–20 (1st Cir. 2001) (employing a similar inquiry and holding that the Federal Death Penalty Act applies to Puerto Rico).  Cordova did not overrule the model of analysis used in those decisions.

C.     The Panel's Decision Misapplies Cordova and Misreads Congressional Intent

While the larger question is which model of analysis to use for application of federal criminal statutes to Puerto Rico, even the Cordova framework itself does not dictate the outcome that the panel reached here, that is, forbidding federal prosecutors from enforcing

---

[3]     The Ninth Circuit has used similar reasoning and assumptions in examining the application of federal prohibitions on sex trafficking to the Commonwealth of the Northern Mariana Islands.  See United States v. Chang Da Liu, 538 F.3d 1078, 1081–84 (9th Cir. 2008).

§ 2421(a) against sex traffickers of adults who operate wholly within Puerto Rico. Even applying Cordova, it is not "fair to assume that the framers of the [Mann] Act, had they been aware [that Puerto Rico achieved Commonwealth status], would have intended" for § 2421(a) to not apply to Puerto Rico as a territory. 649 F.2d at 42. No one has argued to this court that Puerto Rico does not want the benefit of the full federal prosecutorial resources afforded by § 2421(a).

The panel adopts a presumption that, for statutory interpretation purposes, Puerto Rico must be said to be a state and not a territory unless there exists "specific evidence or clear policy reasons" evidencing an intent to treat Puerto Rico as a territory. Maldonado-Burgos, 844 F.3d at 342 (quoting Cordova, 649 F.2d at 42). But Cordova did not mention our earlier default rule, nor did Cordova purport to overrule it. Rather, Cordova addressed a question about the Sherman Act while making the point that the question of congressional intent must be resolved statute-by-statute and doing so for distinctly different policy reasons. See 649 F.2d at 38. By contrast, both evidence and sound policy dictate that the provisions in § 2421(a) of the Mann Act are meant exactly to reach sex trafficking of adults within Puerto Rico, even after 1952.

Why is that so? First, Congress has not said otherwise, and for good reason. Puerto Rico is an island, and most instances of sex trafficking of adult victims surely occur within Puerto Rico. There is also the simple fact that, for over 70 years preceding the panel's decision, this court had held that § 2421(a), the provision at issue in this case, has so applied. See Crespo, 151 F.2d 44. Congress never took issue with that interpretation, showing its likely agreement with the interpretation.[4]

---

[4] Cordova also did not purport to overturn First Circuit precedent, on which Congress may have relied, unlike Maldonado-Burgos. The test articulated in Cordova, and applied by the panel here, failed to account for congressional reliance on settled First Circuit precedent. The Supreme Court in 1937 had applied the provision of the Sherman Act at issue in Cordova to Puerto Rico, see Puerto Rico v. Shell Co., 302 U.S. 253 (1937), but Cordova held that that decision had

For decades, Congress has allowed this court's interpretation of § 2421(a) in <u>Crespo</u> to remain in place. It also confirmed its acquiescence to that interpretation when it amended a different provision of the Mann Act. It is not Congress that has now changed the conclusion that § 2421(a) applies to conduct solely within Puerto Rico; it is a panel of this court. And the panel has done so some 71 years after <u>Crespo</u> and some 64 years after the Commonwealth's constitution was ratified. This is a late-breaking change in the law, of which Congress has had no prior notice.

The panel points out that when Congress in 1998 wanted to create new protections for children from sexual predators, it used the term "commonwealth" rather than the term "territory." <u>Maldonado-Burgos</u>, 844 F.3d at 350 n.10 (citing Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, Title I, § 103, 112 Stat. 2974, 2976 (1998)). Of course it did. And the use of the term may well be evidence of Congress clarifying its intent that the original Act continued to apply to Puerto Rico. The failure by Congress to go back and amend its earlier Mann Act coverage of adult victims does not mean its intentions as to the scope of coverage of adult victims in Puerto Rico had changed.[5] In light of <u>Crespo</u>, Congress had no reason in 1998 to make such an amendment. Nothing in the case law required it to do so, nor did <u>Cordova</u> so require.

The fact that Congress added in 1998 the term "commonwealth" to § 2423(a) of the Mann Act, <u>see</u> Protection of Children from Sexual Predators Act of 1998, § 103, 112 Stat. at 2976,

---

been undercut by subsequent Supreme Court cases, as well as later legislation, a situation not true in <u>Maldonado-Burgos</u>. <u>Cordova</u>, 649 F.2d at 42.

     [5] We have twice rejected similar arguments that the applicability of a federal criminal statute was changed by a textual amendment to a federal criminal law after the creation of the Commonwealth, which did not mention "Puerto Rico." <u>See</u> <u>Villarin Gerena</u>, 553 F.2d at 726 (rejecting argument that post-Commonwealth amendment to 18 U.S.C. § 242 affected application of the statute to Puerto Rico); <u>Moreno Rios</u>, 256 F.2d at 71–72 (rejecting argument that post-Commonwealth amendment to the Narcotic Drugs Import and Export Act affected application of the statute to Puerto Rico).

to cover a gap as to the transporting of children left by <u>Crespo</u>, which concerned trafficking of adult victims, is evidence <u>Crespo</u> correctly captured congressional intent.[6]  Congress not only let our interpretation of § 2421(a) as to adults in <u>Crespo</u> stand, but also, because <u>Crespo</u> did not address the statute's coverage as to children, Congress clarified that § 2423(a) indeed covers sex trafficking of children within Puerto Rico.   This clarification was part of a larger and "comprehensive response to the horrifying menace of sex crimes against children," H.R. Rep. No. 105-557,  at 10 (1998), and nothing in the legislative history of the amendment suggests that the provisions of the Mann Act regarding adults did <u>not</u> apply to conduct occurring solely within Puerto Rico.

We also see no reason to think Congress would want § 2421(a)'s general prohibition against sex trafficking of adults to have a different, more limited jurisdictional scope in Puerto Rico than § 2423(a)'s more specific prohibition against sex trafficking of minors.  <u>See</u> <u>United States</u> v. <u>Washington</u>, 743 F.3d 938, 941 (4th Cir. 2014) (explaining that § 2421 is "§ 2423(a)'s more general counterpart").   Such a result would be surprising.   The absence of an express congressional statement to that end, in light of <u>Crespo</u>, does not convince us otherwise.  <u>See</u> <u>SCA Hygiene Prods. Aktiebolag</u> v. <u>First Quality Baby Prods., LLC</u>, 137 S. Ct. 954, 963–64 (2017) ("If Congress examined the relevant legal landscape when it adopted 35 U.S.C. § 282, it could not have missed our cases endorsing this general rule."); <u>Shapiro</u> v. <u>United States</u>, 335 U.S. 1, 16 (1948) (Congress, in reenacting a statute, is presumed to adopt prior judicial constructions of the statute).

---

[6]     Congress is presumed to operate with a knowledge of settled judicial precedent.  <u>In re Rivera Torres</u>, 432 F.3d 20, 25 (1st Cir. 2005) ("Congress is presumed to know the content of background law.").   This principle also applies when Congress decides to amend a statute. <u>Hernández-Miranda</u> v. <u>Empresas Díaz Massó, Inc.</u>, 651 F.3d 167, 175 (1st Cir. 2011) ("Congress is presumed to know judicial interpretations of statutory terms as of the time it amends statutes.").

Other settled rules of statutory interpretation also weigh against the panel's reading of congressional intent. Congressional silence should not be read as repudiation; instead, precedent instructs that in analogous contexts congressional silence suggests the continued validity of a judicial rule. See Succar v. Ashcroft, 394 F.3d 8, 35 n.35 (1st Cir. 2005) ("When Congress has amended a statute in other ways, but not addressed the specific issue in question, [a] court can consider congressional silence in the appropriate historical context and use it as evidence of congressional intent not to abrogate well-established doctrine." (citing Monessen Sw. Ry. Co. v. Morgan, 486 U.S. 330 (1988))); see also Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017).[7]

Given these background rules of interpretation, the legislative history of the Mann Act, and the practical consequences, "[i]f Congress had wanted to exclude" sex trafficking within Puerto Rico from § 2421(a), "it would have done so [explicitly] without relying on the creativity of parties arguing before the courts." Franklin Cal. Tax-Free Tr. v. Puerto Rico, 805 F.3d 322, 338 (1st Cir. 2015), aff'd, 136 S. Ct. 1938 (2016).

---

[7]   The Supreme Court has recently reaffirmed these principles:

Accordingly, the only question we must answer is whether Congress changed the meaning of § 1400(b) when it amended § 1391. When Congress intends to effect a change of that kind, it ordinarily provides a relatively clear indication of its intent in the text of the amended provision. See United States v. Madigan, 300 U.S. 500, 506 (1937) ("[T]he modification by implication of the settled construction of an earlier and different section is not favored[.]"); A. Scalia & B. Garner, Reading Law 331 (2012) ("A clear, authoritative judicial holding on the meaning of a particular provision should not be cast in doubt and subjected to challenge whenever a related though not utterly inconsistent provision is adopted in the same statute or even in an affiliated statute[.]").

TC Heartland LLC v. Kraft Food Grp. Brands LLC, No. 16-341, slip op. at 8 (May 22, 2017).

Indeed, as the United States has pointed out, the panel's contrary reading would produce an absurd result, and one that is in fact squarely before us. See Am. Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."). The panel's interpretation means that "sex trafficking of a minor wholly within Puerto Rico could be prosecuted under the Mann Act, but sex trafficking of an adult who has the cognitive abilities of a minor . . . would be beyond the Act's reach." It is especially hard to imagine that Congress intended to curtail federal enforcement of the Mann Act here, where an adult male school bus driver raped and impregnated his mentally disabled 18-year-old charge. Had the girl been a few months shy of 18, the Mann Act would have plainly applied. The panel's distinction between § 2421(a) and § 2423(a) as "specify[ing] separate crimes against separate classes of victims," Maldonado-Burgos, 844 F.3d at 351 n.11, then, is a hollow one.

## II.

The government's petition explains persuasively not just that the panel's decision is wrong, but also that the case presents a question of exceptional importance: this misinterpretation of congressional intent deprives Puerto Rico of federal prosecutorial resources -- at a time when it can ill afford to lose them -- and threatens the enforcement of other federal statutes as to conduct wholly within Puerto Rico.

The panel's cursory inquiry into "clear policy reasons," see Cordova, 649 F.2d at 42, may have been appropriate given the context of prior cases, see, e.g., Jusino Mercado v. Puerto Rico, 214 F.3d 34, 44 (1st Cir. 2000); Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 322 (1st Cir. 2012), but not so here. Puerto Rico is in the midst of a serious economic crisis, and it will sorely miss the federal law enforcement and prosecutorial resources this decision eliminates.

The United States has also offered evidence that sex trafficking in Puerto Rico is a very serious problem, that its usual scope is wholly within the island, and that local authorities have been hard pressed to address it. See César A. Rey Hernández & Luisa Hernández Angueira, Human Trafficking in Puerto Rico: An Invisible Challenge 16 (2010), http://protectionproject.org/wpcontent/uploads/2010/09/RMF-Eng.pdf (noting that, as of 2010, local authorities paid "little attention" to "[intra-island sex] trafficking in Puerto Rico, which is the predominant form of trafficking on the Island"). The mere fact that the legislative history lacks specific references to Puerto Rico speaks more to the fact that the problem is one that may be "invisible" to raw statistics, see id. at 1, 34, but nonetheless one of which Congress should be acutely aware, especially given its appearances in other contexts. See U.S. Dep't of State, Trafficking in Persons Report 393 (2016) (noting that in 2015, the HHS-funded National Human Trafficking Resource Center received "47 calls from U.S. territories, with most calls coming from Puerto Rico"); Posture Statement of Gen. John F. Kelly, U.S. Marine Corps Commander, Before S. Armed Services Comm., 113th Cong. 7-8 (2014), https://www.armed-services.senate.gov/imo/media/doc/Kelly_03-13-14.pdf (pointing out that Puerto Rico and the U.S. Virgin Islands are especially vulnerable to sex and labor trafficking, as both are destinations for migrant smuggling organizations).

The United States also contends that the panel's decision will have much greater consequences for enforcement of federal criminal statutes in Puerto Rico. It argues, to give a few examples, that the decision may adversely affect the government's ability to exercise prosecutorial authority under other federal statutes, including the Hobbs Act, see 18 U.S.C. § 1951(b)(3) (defining "commerce" for the Hobbs Act as, inter alia, "commerce within the District of Columbia, or any Territory or Possession of the United States"); see also id. § 1591(a)(1) (punishing sex

trafficking of children "in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States"); id. § 2251(a) (punishing sexual exploitation of children "in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States"), and under other provisions of the Mann Act, see id. § 2422(a) (punishing "[w]hoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any [criminal] sexual activity"). It is likely that defense counsel in federal prosecutions in Puerto Rico will soon try to expand that list, which the government does not suggest is exhaustive.

We would not conclude that Congress wanted at any time to withhold the protection afforded to adult victims in Puerto Rico in the Mann Act, to curtail the full measure of federal resources to prosecute intra-island sex trafficking, and to endanger the application of other federal criminal statutes to conduct occurring wholly within Puerto Rico in the name of Puerto Rico's sovereignty as a commonwealth.

### III.

The question here, in our view, warrants review by the Supreme Court. Congress may wish to address the panel's misinterpretation of its intent, understanding that the model used goes beyond the applicability of the Mann Act.[8]

We respectfully dissent.

---

[8] Twenty years ago, Congress acted within a few months to amend a federal criminal statute to overrule a decision of this court, which had held that rape resulting from carjacking could not result in "serious bodily injury" to the victim. Congress viewed that ruling as contrary to its intent. United States v. Rivera, No. 95-2186, 1996 WL 338379, at *6 (Aug. 1, 1996) (Lynch, J., dissenting from denial of rehearing en banc) (unpublished opinion) ("[A] statute should not be applied so narrowly or rigidly that it produces results that are wholly at odds with larger considerations of congressional [] policy and intent."). Congress promptly enacted the Carjacking

**TORRUELLA, <u>Circuit Judge</u>, statement concerning denial of rehearing en banc.** I vote in favor of rehearing en banc because this case raises issues of exceptional importance and complexity that clearly meet the requirement of Rule 35(a)(2) of the Federal Rules of Appellate Procedure and thus warrants to be carefully considered by the full court. My vote as to granting the rehearing en banc, however, should not be construed as an indication of my position on the merits.

**THOMPSON**, **<u>Circuit Judge</u>, statement concerning denial of rehearing en banc**. After careful consideration of the contrary views of some of my colleagues, I remain convinced that this court's decision in <u>Cordova & Simonpietri Insurance Agency, Inc.</u> v. <u>Chase Manhattan Bank N.A.</u>, 649 F.2d 36 (1st Cir. 1981), sets forth the framework that governs this appeal, the framework has not been eroded by any subsequent decision of this court or the Supreme Court, and the panel opinion, <u>United States</u> v. <u>Maldonado-Burgos</u>, 844 F.3d 339 (1st Cir. 2016), correctly applied the <u>Cordova</u> framework to the statutory-interpretation question presented in this case.

## I. The <u>Cordova</u> Framework Governs

Although my dissenting colleagues attempt to limit <u>Cordova</u> to the Sherman Act context, <u>Cordova</u> itself belies any such confinement; it sets forth a broadly applicable test for determining whether federal statutes that treat territories differently than states continue to treat Puerto Rico as a territory after it became a commonwealth. <u>See</u> <u>Cordova</u>, 649 F.2d at 38, 42. Nor has our subsequent case law limited <u>Cordova</u> in the manner advocated by the dissent. <u>See, e.g.</u>,

---

Correction Act of 1996, which effectively overruled the panel decision. <u>See</u> Pub. L. No. 104-217, § 2, 110 Stat 3020, 3020 (1996).

Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 321-23 & n.3 (1st Cir. 2012); Jusino Mercado v. Puerto Rico, 214 F.3d 34, 41-44 (1st Cir. 2000).

Similarly, the dissent's efforts to sidestep Cordova on the basis that the pre-1952 on-point decision in that case — Puerto Rico v. Shell Co., 302 U.S. 253 (1937) — had been undercut by subsequent Supreme Court cases and legislation in a way that is not also true for the relevant pre-1952 decision in this case — Crespo v. United States, 151 F.2d 44 (1st Cir. 1945) — is unavailing. The subsequent cases and legislation discussed in Cordova also postdate our decision in Crespo, and they do not impact Shell Co. any differently than they do Crespo. See Cordova, 649 F.2d at 38, 40.

Finally, I simply disagree with the dissent's position that the framework that should govern this case is set forth in Examining Board of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572 (1976), and that the panel decision conflicts with Examining Board. The question presented in this case is whether 18 U.S.C. § 2421 continues to treat Puerto Rico as a territory after the island became a commonwealth. The question in Examining Board, by contrast, was whether a federal statute that had applied to Puerto Rico before it attained commonwealth status ceased to apply to it at all once it became a commonwealth. See Examining Bd., 426 U.S. at 592, 594, 597.[9] Unlike Examining Board, Cordova involved the same type of question with which we are faced in this case: whether Congress, in enacting a statute that gives states but not territories autonomy over purely local matters, would have intended for Puerto Rico to enjoy the

---

[9] The same is true for the other cases relied upon by the dissent. See United States v. Acosta-Martinez, 252 F.3d 13, 18, 20 (1st Cir. 2001); United States v. Villarin Gerena, 553 F.2d 723, 724-25 (1st Cir. 1977); Moreno Rios v. United States, 256 F.2d 68, 71-72 (1st Cir. 1958); see also United States v. Chang Da Liu, 538 F.3d 1078, 1080-82, 1084 (9th Cir. 2008).

- 15 -

same local autonomy that it intended for states to enjoy had it known of the "state-like autonomy" that Congress granted Puerto Rico in 1952. Cordova, 649 F.2d at 42.

## II. Cordova Has Not Been Eroded

The dissent suggests that Cordova now rests on shaky ground after the Supreme Court's decision in Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016). The panel opinion explained why this assertion is incorrect, see Maldonado-Burgos, 844 F.3d at 344-45, and I need not parrot that explanation here. It suffices to say that the Court in Sánchez Valle was faced with a very different question of constitutional dimension — not a statutory-interpretation question like the one presented in this case — that necessitated its own unique analysis. See id.; see also Jusino Mercado, 214 F.3d at 44 (explaining difference between question of "constitutional capacity" — "Congress's power under the Territorial Clause" — and one of "statutory construction"). Nor have this court's decisions since Cordova questioned its continued validity. See, e.g., Antilles Cement, 670 F.3d at 321-23 & n.3; Jusino Mercado, 214 F.3d at 41-44. After thirty-six years without any hint from Congress, the Supreme Court, or this court that Cordova is not still good law, I'm unwilling to cast it aside.

## III. Cordova was Properly Applied in This Case

I respectfully disagree with the dissent's assertion that the panel opinion misapplied the Cordova framework. To the contrary, the panel opinion faithfully applied Cordova and correctly found no "specific evidence or clear policy reasons embedded in § 2421(a)" of the type Cordova requires. Maldonado-Burgos, 844 F.3d at 350; see also Cordova, 649 F.2d at 42 ("[T]here would have to be specific evidence or clear policy reasons embedded in a particular statute to

demonstrate a statutory intent to intervene more extensively into the local affairs of post-Constitutional Puerto Rico than into the local affairs of a state.").

The dissent's contrary assessment is mistaken. First, the dissent asserts that "[n]o one has argued to this court that Puerto Rico does not want the benefit of the full federal prosecutorial resources afforded by § 2421(a)" and that "Puerto Rico is in the midst of a serious economic crisis, and it will sorely miss the federal law enforcement and prosecutorial resources this decision eliminates." But these assertions are entirely irrelevant to the Cordova analysis, and the dissent does not attempt to show otherwise. Second, the dissent emphasizes congressional silence in the face of Crespo, but the same was true in Cordova. Third, the dissent identifies documents discussing the seriousness of the sex-trafficking problem in Puerto Rico, but it makes no effort to explain how those documents are responsive to the critical question of congressional intent that the Cordova framework examines. See Maldonado-Burgos, 844 F.3d at 350. Fourth, the dissent's concern that the panel opinion might lead to similar Cordova based challenges to other federal statutes that treat Puerto Rico differently than the states overlooks that Cordova, not the panel opinion, is the root of that concern; moreover, the dissent provides no basis that any Cordova based challenge to the other federal statutes it identifies will ultimately be resolved in the same way as in this case.

Finally, the dissent relies on the amendment to a separate provision of the Mann Act, 18 U.S.C. § 2423(a), to support its interpretation of the scope of § 2421(a).[10] In my view, the dissent's reliance on this amendment is overly speculative, especially considering the sparse legislative history that surrounds it. In any event, the insertion of the word "commonwealth" in

---

[10] In a somewhat related effort, the dissent appears to criticize the panel opinion for relying on this same amendment. But, of course, the panel opinion did no such thing; in fact, the panel opinion expressly disclaimed any such reliance. See Maldonado-Burgos, 844 F.3d at 350 n.10.

- 17 -

§ 2423(a) cuts both ways. If Congress intended the amendment to clarify that it wanted the Mann Act to treat Puerto Rico differently than a state, its decision to amend only § 2423(a) and to not take the simple expedient of inserting "commonwealth" into § 2421(a) was curious. Given the lack of clarity in the legislative record, I remain comfortable with the panel opinion's application of the Cordova framework to § 2421(a) — the only provision of the Mann Act at issue in this case — and its conclusion that any potential dissonance between §§ 2421(a) and 2423(a) is not absurd. See Maldonado-Burgos, 844 F.3d at 351 n.11.

## CONCLUSION

I remain convinced that the panel opinion correctly applied the Cordova framework and that, consequently, rehearing en banc is not warranted in this case.

By the Court:

/s/ Margaret Carter, Clerk


cc:
Hon. Daniel R. Dominguez
Frances Rios de Moran, Clerk, United States District Court for the District of Puerto Rico
Victor J. Gonzalez-Bothwell
Vivianne Marie Marrero-Torres
Eric A. Vos
Liza Lorraine Rosado-Rodriguez
Eleonora Concepcion Marranzini
Marshal David Morgan
Nelson Jose Perez-Sosa
Juan Carlos Reyes-Ramos
John Patrick Taddei