THOMPSON, Circuit Judge,
statement concerning denial of rehearing en banc.
After careful consideration of the contrary views of some of my colleagues, I remain convinced that this court’s decision in Cordova & Simonpietri Insurance Agency, Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36 (1st Cir. 1981), sets forth the framework that governs this appeal, the framework has not been eroded by any subsequent decision of this court or the Supreme Court, and the panel opinion, United States v. Maldonado-Burgos, 844 *9 F.3d 339 (1st Cir. 2016), correctly applied the Cordova framework to the statutory-interpretation question presented in this case.
I. The Cordova Framework Governs
Although my dissenting colleagues attempt to limit Cordova to the Sherman Act context, Cordova itself belies any such confinement; it sets forth a broadly applicable test for determining whether federal statutes that treat territories differently than states continue to treat Puerto Rico as a territory after it became a commonwealth. See Cordova, 649 F.2d at 38, 42. Nor has our subsequent case law limited Cordova in the manner advocated by the dissent. See, e.g., Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 321-23 & n.3 (1st Cir. 2012); Jusino Mercado v. Puerto Rico, 214 F.3d 34, 41-44 (1st Cir. 2000).
Similarly, the dissent’s efforts to sidestep Cordova on the basis that the pre-1952 on-point decision in that case — Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937) — had been undercut by subsequent Supreme Court cases and legislation in a way that is not also true for the relevant pre-1952 decision in this case—Crespo v. United States, 151 F.2d 44 (1st Cir. 1945)—is unavailing. The subsequent cases and legislation discussed in Cordova also postdate our decision in Crespo, and they do not impact Shell Co. any differently than they do Crespo. See Cordova, 649 F.2d at 38, 40.
Finally, I simply disagree with the dissent’s position that the framework that should govern this case is set forth in Examining Board of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 96. S.Ct. 2264, 49 L.Ed.2d 65 (1976), and- that the panel, decision conflicts with Examining Board. The question presented .in this case is whether 18 U.S.C. § .2421 continues to treat Puerto Rico as a territory after the island ■ became a commonwealth. The question in Examining Board, by contrast, was whether a federal statute that had applied to Puerto Rico before it attained commonwealth status ceased to apply to it at all once it became a commonwealth. See Examining Bd., 426 U.S. at 592, 594, 597, 96 S.Ct. 2264.[9] Unlike Examining Board, Cordova involved the same type of question with which we are faced in .this case: whether Congress, in enacting a statute that gives states but not territories autonomy over purely local matters, would have intended for Puerto Rico to enjoy the same local autonomy that it intended for .states to enjoy had it known of the “state-like autonomy” that Congress granted Puerto Rico in 1952. Cordova, 649 F.2d at 42.
, II. Cordova Has Not Been Eroded .
The dissent suggests that- Cordova now rests on shaky ground after' the Supreme Court’s decision iri Puerto Rico v. Sánchez Valle, — U.S. —, 136 S.Ct. 1863, 195 L.Ed.2d 179 (2016). The panel opinion explained why this assertion is incorrect, see Maldonado-Burgos, 844 F.3d at 344-45, and I need not parrot that explanation here. It suffices to say that the Court in Sánchez Valle was faced with a very different question of constitutional dimension— not a statutory-interpretation question like •the one presented in this case — that necessitated its own unique analysis, See id.; see also Jusino Mercado, 214 F.3d at 44 (ex *10 plaining difference between question of “constitutional capacity1’ — “Congress’s power under the Territorial Clause” — and one of “statutory construction”). Nor have this court’s decisions since Cordova questioned its continued validity. See, e.g., Antilles Cement, 670 F.3d at 321-23 & n.3; Jusino Mercado, 214 F.3d at 41-44. After thirty-six years without any hint from Congress, the Supreme Court, or this court that Cordova is not still good law, I’m unwilling to cast it aside.
III. Cordova was Properly Applied in This Case
I respectfully disagree with the dissent’s assertion that the panel opinion misapplied the Cordova framework. To the contrary, the panel opinion faithfully applied Cordo-va and correctly found no “specific evidence or clear policy reasons embedded in § 2421(a)” of the type Cordova requires. Maldonado-Burgos, 844 F.3d at 350; see also Cordova, 649 F.2d at 42 (“[Tjhere would have to be specific evidence or clear policy reasons embedded in a particular statute to demonstrate a statutory intent to intervene more extensively into the local affairs of post-Constitutional Puerto Rico than into the local affairs of a state.”).
The dissent’s contrary assessment is mistaken. First, the dissent asserts that “[n]o one has argued to this court that Puerto Rico does not want the benefit of the full federal prosecutorial resources afforded by § 2421(a)” and that “Puerto Rico is in the midst of a serious economic crisis, and it will sorely miss the federal law enforcement and prosecutorial resources this decision eliminates.” But these assertions are entirely irrelevant to the Cordova analysis, and the dissent does not attempt to show otherwise. Second, the dissent emphasizes congressional silence in the face of Crespo, but the same was true in Cordova. Third, the dissent identifies documents discussing the seriousness of the sex-trafficking problem in Puerto Rico, but it makes no effort to explain how those documents are responsive to the critical question of congressional intent that the Cordova framework examines. See Maldonado-Burgos, 844 F.3d at 350. Fourth, the dissent’s concern that the panel opinion might lead to similar Cordova based challenges to other federal statutes that treat Puerto Rico differently than the states overlooks that Cordova, not the panel opinion, is the root of that concern; moreover, the dissent provides no basis that any Cor-dova based challenge to the other federal statutes it identifies will ultimately be resolved in the same way as in this case.
Finally, the dissent relies on the amendment to a separate provision of the Mann Act, 18 U.S.C. § 2423(a), to support its interpretation of the scope of § 2421(a).[10] In my view, the dissent’s reliance on this amendment is overly speculative, especially considering the sparse legislative history that surrounds it. In any event, the insertion of the word “commonwealth” in § 2423(a) cuts both ways. If Congress intended the amendment to clarify that it wanted the Mann Act to treat Puerto Rico differently than a state, its decision to amend only § 2423(a) and to not take the simple expedient of inserting “commonwealth” into § 2421(a) was curious. Given the lack of clarity in the legislative record, I remain comfortable with the panel opinion’s application of the Cordova framework to § 2421(a) — the only provision of the Mann Act at issue in this case — and its *11 conclusion that any potential dissonance between §§ 2421(a) and 2423(a) is not absurd. See Maldonado-Burgos, 844 F.3d at 351 n.11.
CONCLUSION
I remain convinced that the panel opinion correctly applied the Cordova framework and that, consequently, rehearing en banc is not warranted in this case.

. The same is true for the other cases relied upon by the dissent. See United States v. Acosta-Martinez, 252 F.3d 13, 18, 20 (1st Cir. 2001); United States v. Villarin Gerena, 553 F.2d 723, 724-25 (1st Cir. 1977); Moreno Rios v. United States, 256 F.2d 68, 71-72 (1st Cir. 1958); see also United States v. Chang Da Liu, 538 F.3d 1078, 1080-82, 1084 (9th Cir. 2008).

. In a somewhat related effort, the dissent appears to criticize the panel opinion for relying on this same amendment. But, of course, the panel opinion did no such thing; in fact, the panel opinion expressly disclaimed any such reliance. See Maldonado-Burgos, 844 F.3d at 350 n.10.